45 F.3d 436
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 RESOURCES WAREHOUSING & CONSOLIDATED SERVICES OF CALIFORNIA,
Plaintiff-Appellee/Plaintiff-Cross-Appellant,
v.
HATZLACHH SUPPLY, INC., Defendant-Appellant/Defendant-Cross-Appellee.
 Nos. 93-55248, 93-55250.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1994.
Decided Dec. 21, 1994.
 
 1
 Before: POOLE and REINHARDT, Circuit Judges, and TANNER,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant-appellant Hatzlachh Supply, Inc. ("Hatzlachh"), an importer of electronic goods, appeals from a denial of its counterclaim for television sets stolen from a warehouse owned by plaintiff-appellee Resources Warehousing & Consolidation Services ("Resources"). After a bench trial, the district court awarded $194,681.21 to Resources for breach of contract damages, and denied a set-off for the counterclaim. It also denied Hatzlachh's motion to amend the judgment.
 
 
 4
 Resources filed a cross-appeal seeking prejudgment interest.
 
 
 5
 We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. Sec. 1291, and reverse and remand for an amendment of the judgment to include an offset, and the award of prejudgment interest.
 
 I.
 
 6
 Hatzlachh does not dispute in this court its liability for $191,765.69. It argues only that the district court erred in refusing to grant a set-off against this amount for the value of the stolen television sets.
 
 
 7
 We review the application of California law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). We also review de novo principles of contract interpretation as applied to facts. Aetna Casualty & Surety Co. v. Pintlar Corp., 948 F.2d 1507, 1511 (9th Cir.1991). We review the district court's findings of fact for clear error. Ah Moo v. A.G. Becker Paribas, Inc., 857 F.2d 615, 621 (9th Cir.1988).
 
 
 8
 The district court concluded that Hatzlachh lacked standing to bring its counterclaim since it rejected the goods before their theft, and that Resources was shielded from any negligence claim by sovereign immunity. We find that Hatzlachh has standing, and that Resources is not immune.
 
 A.
 
 9
 The contract for sale of the stolen goods was between Hatzlachh and Cosmos. Resources was a third party to the contract, and had possession of the goods at the time of the theft. Hatzlachh's standing to sue Resources is governed by California Commercial Code Section 2722(a):
 
 
 10
 A right of action against the third party is in either party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods; and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other[.]
 
 
 11
 In the district court, Hatzlachh first alleged that it had title, but dropped that argument, and argued that it had a special property interest and/or an insurable interest in the goods. Special property and insurable interests are governed by California Commercial Code Section 2501(1):
 
 
 12
 The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs
 
 
 13
 (a) When the contract is made if it is for the sale of goods already existing and identified;
 
 
 14
 (b) If the contract is for the sale of future goods ..., when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers[.]
 
 
 15
 In this case, the goods were "marked" by the attachment of Hatzlachh's brand name, Broksonic, on each set. Relying on Section 2501, the district court found that Hatzlachh had a special property interest in the goods until it breached the contract by failing to renew the letter of credit.
 
 
 16
 Hatzlachh argues that it did not breach the contract by letting the letter expire, and that a simple breach does not terminate a special property interest. It argues that only revocation of acceptance or rejection can terminate such an interest, and that neither occurred. Resources agrees that if a buyer terminates a contract by revocation of acceptance or rejection, the buyer lacks standing under Section 2722 to recover against a third party.
 
 
 17
 There is no evidence that Hatzlachh accepted the goods. See Cal.Comm.Code Section 2606 (acceptance of goods). During the time the goods were in transit, Cosmos and Hatzlachh continued their discussion over the amount Hatzlachh would pay. Hatzlachh refused to issue the letter of authorization to Manufacturers Hanover Trust Company which was a prerequisite to payment on the letter of credit. Because there was no acceptance, there could be no revocation of acceptance.
 
 
 18
 There is also no clear evidence of rejection. Rejection requires notification to the seller. Cal.Comm.Code Sec. 2602. While the district court held that the failure to renew the letter of credit was a rejection, the evidence in the record is that the contract was not just the letter of credit, but included the fax Hatzlachh sent to Cosmos confirming a telephone conversation about payment terms. The letter of credit, by its terms, required a letter of authorization from Hatzlachh before the money would be released, and in the fax Hatzlachh attached the condition that it receive a reduction in price to its issuance of the letter of authorization. Cosmos therefore could not tender the letter of authorization, as required, to Manufacturers Hanover along with its draft for the full price. Hatzlachh did not indicate that it did not want the goods, or that the goods were deficient in any way; the dispute between the companies centered on the application of a claimed credit to the amount Hatzlachh owed for the goods. Shortly after Hatzlachh faxed Cosmos again, continuing to negotiate price, the letter of credit expired. This was the situation at the time of the theft. The goods had been neither accepted, nor rejected. It was still possible that the price dispute would be resolved, and Hatzlachh would pay for the goods.
 
 
 19
 Resources relies on Cal.Comm.Code Section 2507(1) ("[t]ender entitles the seller to acceptance of the goods and to payment according to the contract") to argue that Hatzlachh's refusal to authorize payment terminated the contract. However, as Hatzlachh argues, the record shows that Cosmos did not tender the goods according to the terms of the contract. It failed to obtain a letter of authorization. If there was any breach, as far as the record before us reveals, it was Cosmos's. Rather than exercise its right to cancel (Cal.Comm.Code Sec. 2711), Hatzlachh responded with an invitation for further negotiation. Since the contract was still existent at the time of the theft, Hatzlachh retained its special property interest in the goods, and has standing to bring its counterclaim.
 
 
 20
 Resources also argues that Hatzlachh, since it was not the owner of the goods, suffered no injury by their loss, and not only lacked standing to sue, but would achieve a windfall if it were able to recover. As Hatzlachh admits, it was not the owner of the goods. However, as discussed above, it did have a special property interest in the goods which were clearly identified to the contract, and California law grants standing to persons with such an interest. Further, under Section 2722(a), the party who bears the risk of loss clearly has standing to sue. By statute, Hatzlachh, as the consignee, bore the risk of loss. See 19 U.S.C. Sec. 1490(a)(2) ("the bonded warehouse shall arrange for the transportation and storage of the merchandise at the risk and expense of the consignee.") Although we do not speculate on controversies not before us, it is quite possible that Cosmos, relying on this statute, could have held Hatzlachh liable for the cost of the stolen goods.[1]
 
 B.
 
 21
 The district court also held that Resources was entitled to sovereign immunity. Resources' immunity depends on the interpretation of two statutes. The Federal Tort Claims Act waives sovereign immunity which ordinarily covers federal agencies and employees of the government acting within the scope of their employment, as defined in 28 U.S.C. Section 2671. There is an exception to the waiver for
 
 
 22
 [a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.
 
 
 23
 28 U.S.C. Sec. 2680(c). This exception includes claims for negligence during detention, not just for damages caused by the detention itself. Kosak v. United States, 465 U.S. 848, 852 (1983). The district court found that Resources was acting as an "officer of the customs," that its storage of general order goods fit under the Section 2680(c), and therefore that it was immune from liability for the loss of the goods.
 
 
 24
 Hatzlachh does not challenge the legality of customs' seizure of the goods. The importer did not make entry (see 19 U.S.C. Sec. 1484) and therefore customs was required to take possessions and send the goods to a bonded customs warehouse. 19 U.S.C. Sec. 1490. Rather, it makes two arguments why Resources is not immune as an "officer of the customs."
 
 
 25
 First, Hatzlachh argues that Resources was not acting as a customs officer because it was negligent in storing the goods. This argument must fail, for the whole purpose of sovereign immunity is excusing government from its negligent acts. Negligence does not destroy immunity.
 
 
 26
 Second, Hatzlachh argues more convincingly that Resources was an independent contractor, rather than a federal agency, and therefore is not immune. Resources does not claim to be a "federal agency," but an "employee of the government," which includes "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States." 28 U.S.C. Sec. 2671.[2]
 
 
 27
 The distinction between an independent contractor and an agent "turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." Logue v. United States, 412 U.S. 521, 527 (1973) (county jail was acting as independent contractor in housing federal prisoner). In Logue, "although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees." Id. The question turns on "whether its day-to-day operations are supervised by the Federal Government." United States v. Orleans, 425 U.S. 807, 815 (1975).
 
 By statute, a bonded warehouse
 
 28
 shall be used solely for the storage of imported merchandise and shall be placed in charge of a proper officer of the customs, who, together with the proprietor thereof, shall have joint custody of all merchandise stored in the warehouse; and all labor on the merchandise so stored shall be performed by the owner or proprietor of the warehouse, under supervision of the officer of the customs.
 
 
 29
 19 U.S.C. Sec. 1555(a). However, despite this statutory requirement of governmental supervision, under the implementing regulations merchandise can be moved in and out without the physical presence of a customs official. 19 C.F.R. Sec. 19.6. On the day-to-day level, customs has the power to supervise, but need not do so. 19 C.F.R. Sec. 19.4. Customs requires that a bonded warehouse be kept secure, but leaves it to the proprietor to "establish procedures adequate to insure the security of merchandise located in the bonded area." 19 C.F.R. Sec. 12(b)(3). These regulations make it clear that like in Logue and Orleans, the government did not supervise the day-to-day operations of the warehouse, nor the security measures, which allegedly broke down here.
 
 
 30
 Therefore, Resources was not acting as an "employee of the government," but as an independent contractor. The district court erred in finding that Resources was an employee and immune pursuant to Section 2680(c).
 
 II.
 
 31
 The district court, without comment, did not award Resources prejudgment interest on its award. Resources counter-appeals, seeking a remand for prejudgment interest. In this diversity case, we are governed by state law regarding award of interest. Landsberg v. Scrabble Crossword Game Players, Inc., 802 F.2d 1193, 1200 (9th Cir.1986). Thus, California Civil Code Section 3287(a) controls:
 
 
 32
 Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day ...
 
 
 33
 As we have explained recently,
 
 
 34
 Certainty in this context requires that "(1) ... the debtor knows the amount owed or (2) ... the debtor would be able to compute the damages." Fireman's Fund Ins. v. Allstate Ins., 234 Cal.App.3d 1154, 1173 (1991) (citation omitted). It is sufficient that the claim of the party seeking interest be certain: "[E]ven though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest." Fluor Corp. v. United States, 405 F.2d 823, 830 (9th Cir.1969) (applying California law).
 
 
 35
 United States ex rel. Bartec Ind. v. United Pacific Co., 15 F.3d 855, 856 (9th Cir.1994). Thus, Resources is entitled to prejudgment interest if its damages were certain.
 
 
 36
 Resources claimed a specific amount of contract damages, based on invoices. Hatzlachh disputed a subset of these claims, over a year later. The district court made findings of facts regarding the nature of Resources' evidence and Hatzlachh's objections:
 
 
 37
 (1) The charges are evidenced by invoices and freight bills made in the ordinary course of business at the time the services were rendered.
 
 
 38
 (2) The Bill of Particulars itemized all of the services and charges for which Resources sought recovery.
 
 
 39
 (3) Hatzlachh's objects were not timely. It objected to $85,665.76 worth of the total charges set forth in the Bill of Particulars. No objection was made to the balance.
 
 
 40
 These findings of fact support a conclusion that the damages were certain. Most of Resources' claim, $109,458.25 worth of charges, was never in dispute. The district court found that the objections to the remainder were untimely, and did not address them on their merits in its decision. Because its findings show that Resources' damages were certain, the district court erred in failing to award prejudgment interest. Such interest should have been awarded at the rate of ten percent per annum. Cal.Civ.Code Sec. 3289(b).
 
 
 41
 The district court has the discretion to decide from what date the interest should run. Cal.Civ.Code Sec. 3287(b). We decline to reach this issue ourselves.
 
 III.
 
 42
 Hatzlachh had standing to sue regarding the theft of the goods, since it had not either rejected or accepted the goods at the time of the theft, and bore the risk of loss. Further, Resources was not entitled to sovereign immunity against the counterclaim since it was acting as an independent contractor. However, Resources was entitled to prejudgment interest on its award.
 
 
 43
 We remand for recalculation of the judgment, including a set-off for the value of the stolen goods, and the calculation of prejudgment interest.
 
 
 44
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Resources raises two arguments on appeal that it failed to raise below: failure of mutuality and lack of independent action. We ordinarily do not address novel arguments on appeal. See International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401 (9th Cir.1985)
 We briefly note that these arguments are both based on California cases which predate the adoption of the Uniform Commercial Code into California law, which occurred in 1963. See, e.g., Advance Indus. Finance Co. v. Western Equities, Inc., 173 Cal.App.2d 420 (1959). The only current case cited, Prudential Resinsur. Co. v. Superior Court, 3 Cal.4th 1118 (1992), is inapposite since it involves specific provisions of the Insurance Code, not general principals of mutuality and set-off.
 
 
 [2]
 Resources also claims to be a "officer of the customs" pursuant to section 1401(i) as "any agent or other person authorized by law or designated by the Secretary of the Treasury to perform any duties of an officer of the Customs Service." Resources relies upon United States v. Victoria-Peguero, 920 F.2d 77 (1st Cir.1990), cert. denied 500 U.S. 932 (1991), in which the First Circuit held that Puerto Rican police officers who were formally designated customs officers by the Secretary of the Treasury were authorized to act as such. However, Resources can claim no official designation as a customs officer, and it is asking us to push the law well beyond its current boundaries. We decline the invitation. In storing general order goods, Resources was not performing the duties of a customs officer, but merely assisting customs in fulfilling its duties. See 19 U.S.C. Sec. 1490(a) (customs officer has duty to send merchandise to bonded warehouse)