LOGUE ET AL. *v.* UNITED STATES

No. 72–656.   Argued April 24, 1973—Decided June 11, 1973

REHNQUIST, J., delivered the opinion for a unanimous Court. STEWART and MARSHALL, JJ., filed a separate statement.

*James DeAnda* argued the cause for petitioners. With him on the brief were *J. Robert McKissick, Ed Idar, Jr., Mario Obledo,* and *Michael Mendelson.*

*Mark L. Evans* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wood,* and *Robert E. Kopp.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Reagan Logue, a federal prisoner confined in a county jail pending trial, fashioned a noose from a bandage covering a laceration on his left arm and hanged himself. His mother and adoptive father sued the United States for damages under the Federal Tort Claims Act, 28 U. S. C. § 1346 (b),[1] claiming that negligence on the part of Government agents and employees proximately caused the death of their son. The District Court determined that Logue's death was the result of negligence for which the United States was liable, and awarded damages. 334 F. Supp. 322 (SD Tex. 1971).

---

[1] "Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United

The Court of Appeals reversed this judgment, 459 F. 2d 408 (1972), rehearing en banc denied, 463 F. 2d 1340 (1972). We granted certiorari in order to consider the application to this case of the Act's exclusion of employees of a "contractor with the United States." 28 U. S. C. § 2671.

On May 22, 1968, Reagan Logue was arrested by Deputy United States Marshal Del Bowers on a bench warrant charging Logue with conspiracy to smuggle 229 pounds of marihuana into the United States. After a hearing, he was taken to the Nueces County jail in Corpus Christi, Texas, to await trial. This jail is one of some 800 institutions operated by state and local governments that contract with the Federal Bureau of Prisons to provide for the safekeeping, care, and subsistence of federal prisoners.[2]

---

States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346 (b).

[2] The Federal Bureau of Prisons has statutory authority to contract with state prisons for the housing of federal prisoners:

"For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

"Such Federal prisoners shall be employed only in the manufacture of articles for, the production of supplies for, the construction of public works for, and the maintenance and care of the institutions of, the State or political subdivision in which they are imprisoned.

"The rates to be paid for the care and custody of said persons shall take into consideration the character of the quarters furnished, sanitary conditions, and quality of subsistence and may be such as will permit and encourage the proper authorities to provide rea-

On the day after his initial incarceration Logue attempted to commit suicide by slashing veins in his left arm. He was immediately taken to a hospital emergency room for treatment of the laceration. While the wound turned out to be relatively minor, Logue was admitted to the hospital's psychiatric floor because of the attending doctor's observation that he was actively hallucinating and out of touch with reality. The psychiatrist who later took charge of the case, recognizing Logue's suicidal tendencies, recommended to federal officials that he be committed to a medical facility for rehabilitation.[3]

On the following day, May 24, the District Court ordered that Logue be transferred to a federal medical facility pursuant to 18 U. S. C. § 4244. While awaiting the processing of papers and other steps preparatory to the actual transfer, however, federal officials made arrangements to transfer Logue back to the Nueces County jail.[4] Before the transfer, Bowers informed the chief jailer of Logue's suicidal tendencies and requested that he prepare for Logue a special cell removed of all dangerous objects that might be used in another suicide attempt. Such a cell was prepared by the jail authorities, and Logue was placed in it. Bowers made no specific arrangements for constant surveillance of Logue once he

sonably decent, sanitary, and healthful quarters and subsistence for such persons." 18 U. S. C. § 4002.

The contract with the Nueces County jail incorporates by reference the standard of care set forth in this statute.

[3] There was testimony that Logue had twice before made suicide attempts.

[4] There was testimony at trial that it normally takes about a week or two after a commitment order has been entered before a prisoner can be physically transferred to a mental institution. There was also testimony that this process can be expedited to obtain commitment as early as 24 hours after an order has been signed.

was confined, and the jail employees made only periodic checks when they were on that floor for some other reason. The day after his return to the jail, Logue removed the Kerlix bandage that had been applied to the laceration on his left arm and hanged himself.

The District Court found that there had been a contract between the Government and Nueces County whereby the latter undertook to house federal prisoners in the county jail at Corpus Christi. That court nonetheless found that the United States was liable for the negligence of the employees of the Nueces County sheriff as well as for the negligence of its own employee. The court found the former to have been negligent because their surveillance of Logue was "inadequate," and it found Bowers to have been negligent in failing to make "specific arrangements . . . for constant surveillance of the prisoner."

The Court of Appeals reversed the judgment of the District Court, stating in its opinion that:

> "We interpret [18 U. S. C. § 4002] as fixing the status of the Nueces County jail as that of a 'contractor.' Title 28 U. S. C., Sec. 2671 . . . . This insulates the United States from liability under the FTCA for the negligent acts or omissions of the jail's employees. We find no support in the record for holding that Deputy Marshal Bowers had any power or authority to control any of the internal functions of the Nueces County jail. The deputy marshal, accordingly, violated no duty of safekeeping with respect to the deceased." 459 F. 2d, at 411.

The Federal Tort Claims Act makes the United States liable for money damages "caused by the negligent or wrongful act or omission of any employee of the Gov-

ernment . . . ." 28 U. S. C. § 1346 (b). Section 2671 of Title 28 U. S. C. contains the following definitions:

"As used in this chapter and sections 1346 (b) and 2401 (b) of this title, the term 'Federal agency' includes the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

For the Government to be liable for the negligence of an employee of the Nueces County jail, he must be shown to be an "employee of the Government" as that term is used in the Federal Tort Claims Act. Though petitioners do not always distinguish between their two theories, they appear to contend alternatively that the Nueces County jail is a "Federal agency" by reason of its contract for the care of federal prisoners, or that the employees of the jail are "acting on behalf of" the Bureau of Prisons or the Government in performing services for federal prisoners. The Court of Appeals rejected these contentions, and we believe that it was right in doing so.

We read that portion of the Court of Appeals' opinion quoted *supra* as treating the "contractor" exemption from the definition of "Federal agency" in § 2671 as adopting the common-law distinction between the liability of an employer for the negligent acts of his own employees

and his liability for the employees of a party with whom he contracts for a specified performance. Both the modern common law as reflected in the Restatement of Agency [5] and the law of Texas [6] make the distinction between the servant or agent relationship and that of independent contractor turn on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract.

In *Maryland* v. *United States,* 381 U. S. 41 (1965), one of the factors relied upon by the Court in determining that both military and civilian National Guard personnel were employees of the States, rather than of the United States, for purposes of the Federal Tort Claims Act, was the "supervision exercised by the States over both military and civilian personnel," *id.,* at 53. The courts of appeals that have had occasion to decide the question appear to have unvaryingly held that the "contractor with the United States" language of § 2671 adopts the traditional distinction between employees of the principal and employees of an independent contractor with the principal, and to have also held that the critical factor in making this determination is the authority of

[5] Restatement (Second) of Agency § 2 (1958):

"(1) A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent."

[6] *E. g., Great Western Drilling Co.* v. *Simmons,* 157 Tex. 268, 302 S. W. 2d 400 (1957).

the principal to control the detailed physical performance of the contractor. See, *e. g., Gowdy* v. *United States,* 412 F. 2d 525, 534 (CA6 1969); *Eutsler* v. *United States,* 376 F. 2d 634 (CA10 1967); *Yates* v. *United States,* 365 F. 2d 663 (CA4 1966); *Kirk* v. *United States,* 270 F. 2d 110 (CA9 1959).

Petitioners cite the commentary to the Restatement (Second) of Torts § 409 (1965), to the effect that the common-law distinction that shields the employer from liability for injuries caused to another by the negligent act of a contractor or his servant is subject to so many exceptions that it is the general rule "only in the sense that it is applied where no good reason is found for departing from it." Congress, of course, could have left the determination as to whose negligence the Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this congressional choice leaves the courts free to look to the law of torts and agency to define "contractor," it does not leave them free to abrogate the exemption that the Act provides.

Petitioners suggest that because 18 U. S. C. § 4042 imposes a duty on the Bureau of Prisons to "provide for the safekeeping, care, and subsistence of all persons charged with . . . offenses against the United States . . ." the Nueces County employees who were discharging the Government's obligation by contract should be held to be employees of the Government for purposes of liability under the Act.[7] This Court held in *United States* v. *Muniz,* 374 U. S. 150 (1963), that a breach of the

---

[7] This argument is also put in terms of a "non-delegable duty" owed by the Government to a prisoner under 18 U. S. C. § 4042.

duty imposed on the Government by 18 U. S. C. § 4042 was actionable under the Act. But the same public law that imposed this duty on the Government also authorized the Government to contract with state and local authorities to provide safekeeping and care:

"For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

.        .        .        .        .

"The rates to be paid for the care and custody of said persons shall take into consideration the character of the quarters furnished, sanitary conditions, and quality of subsistence *and may be such as will permit and encourage the proper authorities to provide reasonably decent, sanitary, and healthful quarters and subsistence for such persons."* 18 U. S. C. § 4002 (emphasis added).

Thus, Congress not only authorized the Government to make contracts such as the one here in question, but rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job. The contract entered into between the Government and Nueces County reflects a similar division of responsibility. The county undertakes to provide custody in accordance with the Bureau of Prisons' "rules and regulations governing the care and custody of persons committed" under the contract.

These rules in turn specify standards of treatment for federal prisoners, including methods of discipline, rules for communicating with attorneys, visitation privileges, mail, medical services, and employment. But the agreement gives the United States no authority to physically supervise the conduct of the jail's employees; it reserves to the United States only "the right to enter the institution . . . at reasonable hours for the purpose of inspecting the same and determining the conditions under which federal offenders are housed."

The Court of Appeals' conclusion that the deputy marshal had no authority to control the activities of the sheriff's employees is supported by both the enabling statute and the contract actually executed between the parties. We agree with its resultant holding that the sheriff's employees were employees of a "contractor with the United States," and not, therefore, employees of a "Federal agency."

The judges of the Court of Appeals who dissented from the denial of rehearing en banc pointed out that petitioners alternatively contended in that court, as they do here, that even though the sheriffs' employees might not be "employees" of a federal agency, they might nonetheless be "acting on behalf of a Federal agency in an official capacity . . . ." 463 F. 2d, at 1342. If petitioners were successful in establishing this contention, of course, an employee of the Nueces County jail would be an "employee of the government" under § 2671 even though he was not an "employee" of a federal agency.

The legislative history to which we are referred by the parties sheds virtually no light on the congressional purpose in enacting the "acting on behalf of" language of § 2671. The long gestation period of the Act in the committees of Congress has been recounted in *Dalehite* v. *United States,* 346 U. S. 15, 24–30 (1953), and this lengthy period may have something to do with the pau-

city of helpful committee reports on this point. One of the more immediate antecedents of the bill that Congress enacted contained identical "acting on behalf of" language: "and persons acting on behalf of a Federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." H. R. 5373, 77th Cong., 2d Sess., § 101 (1942), quoted in Hearings on H. R. 5373 and H. R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., ser. 13, p. 1 (1942). One of the appendices to the hearings on these bills compares the provisions of H. R. 6463, containing the "acting on behalf of" language, with previous drafts, and states that " 'Employee of the Government' in the present bill is defined to include uncompensated or temporary officers or employees of the United States." Hearings, *supra*, at 58. The committee's observation thus affords some support to the Government's contention that the language is designed to cover special situations such as the "dollar-a-year" man who is in the service of the Government without pay, or an employee of another employer who is placed under direct supervision of a federal agency pursuant to contract or other arrangement.

The dissenting judges in the Court of Appeals expressed the view that "when the Government decides that a particular individual should assume obligations and responsibilities virtually identical to those of a salaried Federal employee, there may very well be some persuasive basis for the suggestion that such an individual's breach of a specific statutory duty owed by the salaried employee to a specific class of persons should visit identical liability upon the United States." 463 F. 2d, at 1342–1343. But we are not persuaded that employees of a contractor with the Government, whose physical performance is not subject to governmental supervision, are to be treated as "acting on behalf of" a federal agency

simply because they are performing tasks that would otherwise be performed by salaried employees of the Government. If this were to be the law, the exclusion of contractors from the definition of "Federal agency" in § 2671 would be virtually meaningless, since it would be a rare situation indeed in which an independent contractor with the Government would be performing tasks that would not otherwise be performed by salaried Government employees.[8]

While we therefore agree with the conclusion of the Court of Appeals that the Government was not liable for the negligence of the employees of Nueces County, we disagree with its implicit determination that such a conclusion ends the case. For the District Court imposed liability on the Government, not only for the negligent acts of employees of the Nueces County sheriff, but also for negligent acts of Deputy Marshal Bowers, who was concededly an employee of the Government. The District Court found that Bowers, knowing of the prisoner's suicidal tendencies, should have made "specific arrangements . . . for constant surveillance of the prisoner," and that his failure to do so was negligence. The Court of Appeals in that portion of its opinion quoted *supra*, at 525, stated that "[t]he deputy marshal, accordingly,

---

[8] The two courts of appeals' cases relied upon by petitioners involved findings of control by the Government that are contrary to the determination of the Court of Appeals in this case. In *Close* v. *United States*, 130 U. S. App. D. C. 125, 397 F. 2d 686 (1968), the court reversed a summary judgment in favor of the Government, observing that there was no reason to assume that the Attorney General was without power to supervise the District of Columbia's jailer. The court expressly noted that no contention was made that the District of Columbia jail was a "contract" jail. *Id.*, at 126, 397 F. 2d, at 687. In *Witt* v. *United States*, 462 F. 2d 1261 (CA2 1972), the court held that the supervising employee "was certainly amenable to some degree of control by the Disciplinary Barracks," *id.*, at 1264, and that he was therefore "acting on behalf of" the Government.

violated no duty of safekeeping with respect to the deceased." 459 F. 2d, at 411. But that conclusion appears to us to follow from the court's discussion of the nature of the intergovernmental relationship and the status of the sheriff's employees rather than being a separate rejection of the finding of the District Court that Bowers himself was negligent. Since the Court of Appeals thus did not consider the distinct question regarding the negligence of Bowers, we believe that the parties' arguments on that question should be addressed in the first instance to the Court of Appeals.

We therefore vacate the judgment of the Court of Appeals and remand the case for consideration of the liability of the Government insofar as that liability may be based on the negligence of Deputy Marshal Bowers.

*It is so ordered.*

MR. JUSTICE STEWART and MR. JUSTICE MARSHALL join the opinion of the Court upon the understanding that, upon remand, the Court of Appeals' consideration of Bowers' negligence will not be limited to his alleged failure to make "specific arrangements . . . for constant surveillance of the prisoner."