Helen LARSEN, Plaintiff, Appellant,

v.

EMPRESAS EL YUNQUE, INC., et al.,
Defendants, Appellees.

No. 86–1433.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1986.
Decided Dec. 30, 1986.

A. Santiago-Villalonga, Hato Rey, P.R., with whom Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., was on brief, for plaintiff, appellant.

Eduardo E. Toro-Font, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for defendants, appellees.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This is a Federal Tort Claims Act case. Plaintiff-appellant Helen Larsen appeals from the grant of summary judgment to defendant-appellee United States. Larsen fell and was injured on the premises of a restaurant, "Empresas El Yunque, Inc.," located in the Caribbean National Forest, more commonly known as "El Yunque." El Yunque, which is a tropical rain forest, is located in Puerto Rico and, like all National Forests, is owned and controlled by the United States. The restaurant was operated by Empresas El Yunque, Inc., under a contract with the United States.

Plaintiff alleged in her complaint: that she fell on the premises of the restaurant; that as owner and operator or licensor of the premises, the United States is liable for the condition of the premises under the law of Puerto Rico; and that the United States was negligent in failing to properly maintain the restaurant premises, in failing to repair the broken and defective pavement which caused plaintiff to fall and in failing to either warn of the danger or rope off the dangerous area.

The issue is whether the United States is insulated from plaintiff's claim by its cloak of sovereign immunity. It is well established that the United States is not, because of its sovereign immunity, liable for torts committed by independent contractors. 28 U.S.C. § 2671 provides in pertinent part:

As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

"Federal agency" includes the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, *but does not include any contractor with the United States.* [Emphasis added.]

There are three controlling cases. *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), considered the

"Act's exclusion of employees of a 'contractor with the United States.' " *Id.* at 523, 93 S.Ct. at 2217. The contract in *Logue* was between the federal government and local county jail officials for the temporary safekeeping, care and custody of federal prisoners. The Court first noted that "the distinction between the servant or agent relationship and that of independent contractor turns on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Id.* at 527, 93 S.Ct. at 2219. It found that the contract did not give the United States the right to physically supervise the jail's employees, only the right to inspect the jail premises. *Id.* at 530, 93 S.Ct. at 2220. The Court, in a unanimous decision, held that because of its sovereign immunity the United States was not liable for the tort of jail employees resulting in the death of a federal prisoner. In light of plaintiff's argument that the law of Puerto Rico controls the duty of the United States as landlord of the restaurant premises, the following language is instructive:

> Congress, of course, could have left the determination as to whose negligence the Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this congressional choice leaves the courts free to look to the law of torts and agency to define "contractor," it does not leave them free to abrogate the exemption that the Act provides.

*Id.* at 528, 93 S.Ct. at 2220.

In *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), the question was whether "a community agency funded under the Economic Opportunity Act of 1964 was a federal instrumentality or agency for purposes of Federal Tort Claims Act liability." *Id.* at 809, 96 S.Ct. at 1973. Quoting from *Logue*, the Court noted that "a critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to

control the detailed physical performance of the contractor.' " *Id.* at 814, 96 S.Ct. at 1976. The key question was "whether the day-to-day operations of the agency were supervised by the Federal Government." *Id.* at 815, 96 S.Ct. at 1976. Because it found that they were not, the Court, in another unanimous decision, held that the community agency was not a federal agency or instrumentality within the meaning of the Federal Tort Claims Act.

In *Brooks v. A.R. & S. Enterprises, Inc.*, 622 F.2d 8 (1st Cir.1980), we considered the "contractor exception" to the Federal Torts Claims Act. Plaintiff brought suit against the United States for injuries received by his daughter after being struck by a United States Navy vehicle. The vehicle was operated by an employee of A.R. & S. Enterprises, Inc., which had a contract with the Navy to supply guard services at the Naval station. Plaintiff sued on the theory of respondeat superior. We pointed out that "[w]hether the United States is liable for the acts of its employees is a question of state law, but whether an individual is an employee of the United States under the FTCA is determined by federal law." *Id.* at 10 (footnotes omitted). Relying on *Logue*, we held that the key question was "whether the United States directs the manner in which the contractor carries out its obligations under the contract." *Id.* at 11. Plaintiff argued that because of its daily supervision and inspection of the activities of the contractor, the Navy exercised sufficient control over it to bring it within the test of liability under *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390. We rejected that argument stating: "The right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors." 622 F.2d at 12. We now turn to the contract between the United States and the restaurant operator.

The United States leased to Empresas El Yunque, Inc., two acres which included a restaurant building with water, electricity and sewage disposal facilities, a service road, and a stairway and trail entrances. The lessee was required to "maintain the

improvements to standards of repair, orderliness, neatness, sanitation and safety acceptable to the forest officer in charge." There was a detailed provision for determining sales and costs. The lease provided that the lessee "shall indemnify the United States against any liability for damage to life or property arising from the occupancy or use of National Forest lands under this permit." There was also an insurance clause in the lease requiring property damage coverage in the amount of $5,000 and coverage for personal injury or death in the amount of $100,000.[1]

It is clear that the government was not involved in the day-to-day operation of the restaurant. Empresas El Yunque, Inc., was an independent contractor with full control over the operation of the restaurant and was responsible for the condition of the restaurant premises. Under the applicable law, the United States' cloak of immunity insulates it from the claim of plaintiff.

*Affirmed.*

We consider this appeal to be frivolous and assess double costs against the attorney for appellant pursuant to Fed.R.App.P. 38.

---

**1.** The pleadings disclose that the insurance carrier for the restaurant operator was liqui-dated sometime after suit was brought against it by plaintiff for the injuries sustained in her fall.