**Jennifer ABRAMS–FOGLIANI, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94 Civ. 4949.**

United States District Court,
E.D. New York.

Dec. 5, 1996.

---

**144**

Jean M. Kestel, Elmont, NY, for Jennifer Abrams Fogliani.

Susan L. Riley, United States Attorney's Office, Brooklyn, NY, for U.S., Department of the Army.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

The United States of America (hereinafter, the "government") moves for summary judgment in this action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, by which plaintiff Jennifer Abrams–Fogliani ("Fogliani") seeks to recover damages for personal injuries she suffered while ascending an allegedly uneven flight of stairs at the Fort Totten Army Base in Queens, New York. For the reasons given below, the government's motion is granted.

## BACKGROUND

The following facts are undisputed. In May 1992, Fogliani was hired as an emergency medical technician by the New York City Health and Hospitals Corporation, Emergen-

cy Medical Services Division ("EMS"). That same month, she began training at the EMS Building (the "EMS Building" or the "Building") at the Fort Totten Army Base, a Building leased from the United States Department of the Army (the "Department of the Army", "the Army" or the "government") to the City of New York (the "City") since June 1984. On the evening of June 12, 1992, while walking up the stairs to the EMS Building, Fogliani either slipped or tripped. In attempting to regain her balance, her knee popped out. Fogliani alleges that the accident was due to the defective condition of the steps leading into the EMS Facility.

The government now moves for summary judgment on the ground that this Court lacks subject matter jurisdiction over Fogliani's claim. The government first contends that, under the lease in effect at the time of the accident, the City was an independent contractor of the government. Therefore, under 28 U.S.C. § 1346(b), because the City was neither an employee nor an agent of the government, the government cannot be held liable for its acts or omissions. As a second line of attack, the government argues that, because plaintiff's claim arises out of government actions involving choice and policy considerations, it is barred under 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA.

## DISCUSSION

### I. Independent Contractor Defense

The FTCA constitutes a limited statutory waiver of the United States' sovereign immunity

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Subject matter jurisdiction does not exist over a tort claim against the United States unless the claim falls within the provisions of the FTCA. *United States v. Orleans*, 425 U.S. 807, 813,

96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). As defined in the FTCA, an "employee of the government" includes officers or employees of any federal agency, members of the armed forces, and persons acting on behalf of the federal agency in an official capacity. 28 U.S.C. § 2671. Federal agency is defined by the Act to exclude "any contractor with the United States." 28 U.S.C. § 2671; *see also, Orleans,* 425 U.S. at 813–14, 96 S.Ct. at 1975–76; *Logue v. United States,* 412 U.S. 521, 526–27, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). Thus, the FTCA explicitly excludes liability based on the wrongful acts or omissions of its contractors.

 Whether one is an employee of the government or an independent contractor is a question of federal law. *Leone v. United States,* 910 F.2d 46, 49 (2d Cir.1990), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1103, 113 ·L.Ed.2d 213 (1991). The critical factor in distinguishing an employee of the government from an independent contractor is whether the government retained the authority to control the detailed physical performance of the work or whether the worker's day-to-day operations in fact were supervised by the federal government. *Logue,* 412 U.S. at 527–28, 93 S.Ct. at 2219; *Orleans,* 425 U.S. at 814–15, 96 S.Ct. at 1976; *B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc.,* 23 F.3d 709, 713 (2d Cir.), *cert. denied,* 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994).

Pursuant to the lease agreement in effect at the time of Fogliani's accident, the City leased the entirety of the EMS Building "together with rights of ingress and egress thereto." Lease at 1. The City took the EMS Building "as is" without representation or warranty and without obligation to the government to make alterations or repairs. Lease, ¶ 3. Further, the City agreed to hold the government harmless for damages or injuries arising from the use and occupation of the property, Lease, ¶ 7, and to secure and maintain liability insurance to protect the government from any and all liability. Lease, ¶ 28. Finally, the City agreed that, "in lieu of rental, the lessee shall repair, renovate, rehabilitate, and maintain the leased property at its own cost and expense." Lease, ¶ 27.

Fogliani points to the following provisions of the City's lease which, she contends, indicate that the government retained authority to control the property. First, the government reserved the right to re-enter the property for the purpose of inspection and inventory. Lease, ¶ 6. Further, any repairs made by the City to damaged or destroyed government property incident to its use of the building were required to meet the satisfaction of the government official supervising the lease. Lease, ¶ 9. Likewise, the use and occupation of the property was subject to the "general supervision and approval of the officer having immediate jurisdiction over the property and to such rules and regulations as may be prescribed by him from time to time." Lease, ¶ 16. The lease also required that the property be used only for training and administrative purposes and be available for use from 8:00 a.m. to midnight, Monday through Friday. Lease, ¶ 26. In addition, according to a supplemental agreement, the City agreed to conform with government policies and regulations regarding policing of the building and grounds, trash removal, and parking. Supplemental Agreement, ¶¶ 2 & 3.

 Fogliani's arguments notwithstanding, the Court notes first that the record is devoid of any evidence whatsoever that the government operated, managed or supervised the day-to-day business of the City's EMS training facility. Furthermore, after reviewing the lease agreement between the government and the City, the Court concludes that the agreement reflects the City's independent status. In general, a contract by which the government requires compliance with its rules and regulations, reserves to itself broad supervisory powers, or retains the right to inspect does not confer upon it the degree of control sufficient to support a finding of jurisdiction under the FTCA. *See Logue,* 412 U.S. 521, 93 S.Ct. 2215 (FTCA jurisdiction absent because, although contract required compliance with government rules and regulations regarding treatment of prisoners and retained right of inspection, contract did not authorize government to physically supervise county jail employees); *Leone,* 910 F.2d 46 (use of detailed government guidelines for conducting medical examinations of pilots does not confer FTCA jurisdiction); *Lipka v. United States,* 369

F.2d 288, 290–92 (2d Cir.1966), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967) (presence of full-time government engineer at site charged with ensuring compliance with contract and safety regulations insufficient to demonstrate control sufficient for a finding of FTCA jurisdiction). Additionally, the lease requires the City to obtain and maintain liability insurance, a provision found by many courts to evidence that the lessee acted as an independent contractor. *See e.g., Larsen v. Empresas El Yunque, Inc.,* 812 F.2d 14, 16 (1st Cir.1986); *De Blasio v. United States,* 617 F.Supp. 1004, 1006–07 (E.D.N.Y.1985) (and cases cited therein). Because Fogliani has offered no evidence that would allow a reasonable inference that the City was anything other than an independent contractor, the Court concludes that Fogliani may not recover against the government based upon a theory of vicarious liability.

## II. *Discretionary Function Exception*

The next question is whether the government may be liable as a property owner out-of-possession for the allegedly defective condition of the steps. The government argues that the discretionary function exception to the FTCA bars Fogliani's claim. This second exception to liability under the FTCA exists pursuant to 28 U.S.C. § 2680(a) which bars suit against the United States for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). This limitation prevents "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.,* 467 U.S. at 814, 104 S.Ct. at 2765.

■ The discretionary function exception only covers "acts that 'involv[e] an element of judgment or choice' ", *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). Therefore, the first step in determining the applicability of the exception is to consider whether the challenged act or omission violated a mandatory regulation or policy that allowed no other option. *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273–74 (1991). If there is room for judgment, the Court then must determine whether the decision involved the kind of judgment Congress intended to protect. The key inquiry is whether the decisions, be they initial decisions or implementation decisions, are necessarily susceptible to policy analysis. *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273–74; *Andrulonis v. United States,* 952 F.2d 652, 654–55 (2d Cir.1991), *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992).

Fogliani contends that the Army was at fault for her accident in two respects: for its defective design of the steps leading to the EMS Building and, once the steps were installed, for failing to repair and correct the defective condition. The government responds first by arguing that decisions regarding the design of equipment used by the military are protected by the discretionary function exception. As a second line of attack, it argues that, even if the Court were to find that the exception does not apply to the design and construction of the steps, nonetheless, the Army's decision to delegate responsibility for the repair, renovation, rehabilitation and maintenance of the EMS Building to the City of New York is protected by the discretionary function exception to the FTCA and, thus, Fogliani's claim is precluded.

The Court will address only the government's second contention. Pursuant to 10

U.S.C. § 2667(b)(4)[1] (now codified at 10 U.S.C. § 2667(b)(5)), Congress authorized the Department of the Army to lease property rent-free in exchange for the lessee's agreement to undertake responsibility for the maintenance, repair and restoration of the property. Courts have recognized that, under this provision, "[t]here is virtually no limitation imposed upon the [Department of the Army] as to [its] choice of lessee or the terms of the lease." *City and County of San Francisco v. United States,* 443 F.Supp. 1116, 1122 (N.D.Cal.1977), *aff'd,* 615 F.2d 498 (9th Cir.1980); *see also, San Francisco Drydock, Inc. v. Dalton,* 1996 WL 34022 at *3 (N.D.Cal. Jan. 22, 1996). The statute itself requires only that the lease be "advantageous to the United States" and such as "will promote the national defense or be in the public interest." 10 U.S.C. § 2667(a). Clearly, then, Congress has granted the Department of the Army discretion to determine whether and under what terms it leases the property under its control.

■ Furthermore, the Court concludes that the leasing of the EMS Building in this case is the kind of policy decision that the discretionary function exception is intended to protect. A decision of this sort implicates a host of considerations uniquely within the knowledge and control of the military. The Department of the Army is in a unique position to assess its stock of property for leasing in light of its future needs. Further, the decision to lease valuable real estate rent-free to its host community, the City of New York, implicates both social and economic considerations. The Lease, beneficial to both parties, strengthens ties between the City and the military.

Fogliani does not dispute that the Army was authorized to delegate responsibility for the EMS Building to the City of New York; however, she contends that, under this Lease, the government retained control over the Building sufficient to expose it to liability. She cites two paragraphs of the Lease in support of her argument, only one of which

requires discussion.[2] According to paragraph 16 of the Lease, "the use and occupation of the premises ... shall be subject to the [Army's] general supervision and approval". Fogliani argues, in effect, that the Army is liable for its failure to adequately supervise its lessee.

The Court finds Fogliani's argument unconvincing. The Lease delegates responsibility for renovation and rehabilitation of the premises to the City at its own cost. Although it reserves to the government the right to exercise general supervision over the use of the Building by the City, neither party to this litigation has identified any mandatory provision concerning the required frequency, scope, or thoroughness of Army supervision of its lessees. In general, courts have not imposed liability on the government for the acts or omissions of its independent contractors because of inadequate supervision, reasoning that the method and extent of supervision is inherently discretionary. *Vasquez v. United States,* 1994 WL 268242 at *3 (S.D.N.Y. June 15, 1994); *see also Kapnisakis v. United States,* 1995 WL 510018 at *2–3 (S.D.N.Y. Aug. 28, 1995); *Brown v. United States,* 1994 WL 319015 at *14 (W.D.N.Y. June 8, 1994). Fogliani has not offered any contrary authority to rebut this line of reasoning. Therefore, this Court concludes that the Army's initial decision to lease the property and its subsequent decisions regarding appropriate levels of supervision were protected under the discretionary function exception to the FTCA. Accordingly, Fogliani's suit against the government is barred.

### CONCLUSION

Therefore, for the foregoing reasons, the government's motion for summary judgment is GRANTED and the action is DISMISSED in its entirety.

SO ORDERED.

---

1. Section 2667(b)(4) provides that a lease may provide ... for the maintenance, protection, repair, or restoration, by the lessee, of the property leased ... as part or all of the consideration of the lease.

2. Fogliani also cites in support paragraph 2 of the Supplemental Agreement which provides that

the "lessee shall maintain and police buildings and grounds ... in accordance with [Army] policies, regulations and directives". Because maintenance of the facility is not at issue in this case, this provision is inapplicable.