**Donald Richard BESSINGER and Leilani Bessinger, Plaintiffs,**

**v.**

**UNITED STATES of America, Tri–Command Military Housing LLC, Actus Lend Lease LLC, Tri–Command Managing Member LLC, County of Beaufort, State of South Carolina, South Carolina Department of Health & Environmental Control, Beaufort County Public Works, South Carolina Department of Transportation, Defendants.**

**C.A. No. 9:05–cv–03058–PMD.**

United States District Court, D. South Carolina, Beaufort Division.

Aug. 9, 2006.

Jarrel L. Wigger, Wigger Law Firm, North Charleston, SC, for Plaintiffs.

Anthony W. Livoti, John M. Grantland, Murphy and Grantland, Christie V. Newman, U.S. Attorneys Office, Columbia, SC, Marshall H. Waldron, Jr., Carolina Litigation Associates, Bluffton, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This is a tort action brought by Plaintiffs Donald and Leilani Bessinger ("Plaintiffs") for damage caused by flooding on their property located at 4381 Pinewood Circle, Beaufort, South Carolina. The negligently performed construction of military housing on the United States Marines Corps Air Station (the "Air Station") adjacent to Plaintiff's property allegedly caused the flooding. Plaintiffs assert sev-eral tort claims against the United States of America (hereinafter "the United States") under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, *et seq.* Jurisdiction for the FTCA claims is based in 28 U.S.C. § 1346(b). Plaintiffs also assert state law claims against the private entities involved in the leasing and development of the Air Station, the State of South Carolina, Beaufort County, and agencies of the State of South Carolina and Beaufort County. Jurisdiction as to these claims is based solely on supplemental jurisdiction, codified at 28 U.S.C. § 1367.[1]

This matter is currently before the court on the Defendant United States of America's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for a lack of subject matter jurisdiction.

## BACKGROUND

The facts relevant to this motion are as follows:

In 1996, Congress established the Military Housing Privatization Initiative ("MHPI") through the 1996 Defense Authorization Act to improve the quality of housing conditions for active-duty military personnel. Pub.L. 104–106, 110 Stat. 186, 544, 10 U.S.C. § 2871, et seq. (1996). Pursuant to the MHPI, Congress intended to "substantially upgrade military housing on an accelerated basis" through the utilization of new "authorities" that permit the military to offer certain cost-saving and money earning benefits to private entities

---

1. Plaintiffs and Defendants Tri–Command Military Housing LLC, Actus Lend Lease LLC, Tri–Command Managing Member LLC, Beaufort County, as well as the State and County agencies, are all "citizens" of South Carolina. Further, it is settled that the State of South Carolina is not a "citizen" for pur-poses of diversity jurisdiction under 28 U.S.C. § 1332. *Postal Tel. Cable Co. v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894). Accordingly, this court has no jurisdiction based on diversity of citizenship to hear claims against these Defendants.

as a *quid pro quo* for their provision of housing and related services to military personnel. 141 Cong. Rec. S18853. The MHPI provides the Department of Defense with twelve alternative authorities or tools to initiate housing projects which include the authorization of direct loans and loan guarantees (10 U.S.C. § 2873), differential payments to supplement service members' housing allowances (10 U.S.C. § 2877), investments such as limited partnerships, stock/bond ownership, and limited liability companies (10 U.S.C. § 2875), and the conveyance or lease of existing military housing and facilities to the contractor (10 U.S.C. §§ 2876, 2878).[2]

On March 1, 2003, the United States, through the Department of the Navy, entered into a "Real Estate Ground Lease and Conveyance of Facilities" (the "Lease," Def. Exhibit 2) with Tri–Command Managing Member LLC ("TCMM"). Through this Lease, authorized by section 2876 of the MHPI, the Department of the Navy conveyed its rights and interests in the Air Station adjoining Plaintiffs' property to TCMM for fifty years, and, further, conveyed title to all existing personal property, *e.g.*, equipment, appliances, furnishings, and title to the newly constructed units. (Lease, ¶¶ 1.6; 23.1.) In return, TCMM agreed to construct, operate, manage and maintain rental housing units on the Air Station. During the construction of the new housing units, the Department of the Navy had the right to send, from time to time, a representative known as the Resident Officer in Charge of Construction ("ROICC"), who would provide "limited initial construction start up assistance, as needed" and would visit "the construction site, as appropriate to gain a perspective for the safety and quality practices being performed." (Lease, ¶ 13.6.) The Department of the Navy retained the right to inspect the premises for compliance with various environmental and safety regulations, and to assure contract compliance, but otherwise agreed to not unreasonably interfere with the construction, use and operation of the premises by TCMM and its contractors and sublessees. (Lease, ¶¶ 12.2.4; 12.2.18; 15.1.) The Department of the Navy also agreed to own and maintain certain 'common areas' within the Air Station, such as the storm water drainage and street systems of the Air Station, though the construction and installation of these systems was exclusively the duty of TCMM. (Lease, ¶¶ 19.5; 19.6.) TCMM agreed to assume all risks and waive all claims against the United States for suits, claims and liabilities arising out of loss or damage to property resulting from any activities conducted or services furnished by TCMM in connection with this Lease. (Lease, ¶ 16.2.)

**2.** In his article, *State Property Tax Implications for Military Privatized Family Housing Program*, 56 A.F. L.Rev. 261 (2005), Philip Morrison, attorney-advisor to the Air Force, distinguished the MHPI from traditional military housing initiatives as follows:

Unlike traditional military construction projects, ownership of the privatized units is vested in the private developer—not the government. The developers build, own and manage the housing units. The military tenants provide an income stream for debt financing repayments through assignment of their BAH to the lockbox account.

The developer companies incur financing for the projects. This is vastly different from traditional military construction. Under traditional military construction, the federal government pays a builder directly and owns all the houses, equipment, and eventual management of the new units. Under the MHPI, title to the housing units vests in private developers upon closing. The improvements are placed on 50–year leaseholds. The United States retains a reversionary interest at the expiration of the ground lease.

Morrison, at 266.

Prior to or concurrently with the execution of the Lease, TCMM, as a managing member, and the Department of the Navy, as an equity investor, formed a limited liability company called Tri–Command Military Housing LLC ("TMH"). As lessee under the Lease, TCMM agreed to assign to TMH all of TCMM's leasehold interests, rights, title and obligations under the Lease, and TMH agreed to assume all financial obligations of TCMM. (Lease at 1–2.) TCMM, as managing member of the Company, is responsible for the design, financing, demolition, renovation, ownership, management, operation, and maintenance of existing and new housing units. (Lease at 2.) The subject property, therefore, is under the control of TMH and under the direction of TCMM, the managing member.

At some time prior to November, 2003, TCMM and its subcontractors began construction of a commercial rental residential subdivision on the Laurel Bay Housing property on the Air Station near Plaintiffs' property. During the course of construction, TCMM and its subcontractors mucked out and filled in wetlands, graded the land for lots, and removed excess groundwater from the construction site.

On or about Thanksgiving of 2003, Plaintiffs discovered that water was beginning to accumulate on their property. Plaintiffs contacted the Commander of the Marine Corps Air Station to complain about the water draining onto their property, and the ROICC, as a result, told the project manager to immediately turn off the pumps that were draining the excess ground water onto the Plaintiffs' property. Following this incident, Plaintiffs' land continued to flood during and following heavy rainfalls. Their property still remains flooded for several days, and interferes with the use and enjoyment of their property. Plaintiffs' house has also shown signs of water damage.

On October 28, 2005, Plaintiffs filed this action in federal district court, alleging that the flooding and damage to their property was caused by the construction on the Air Station, as well as by the improperly designed and maintained water drainage systems in the County. Plaintiffs asserted causes of action for negligence, gross negligence, reckless indifference, negligent infliction of emotional distress, outrage, negligent trespass, negligent construction, nuisance, conversion, and violation of South Carolina Code section 5–31–450. The United States, claiming that this court lacks jurisdiction due to sovereign immunity, now moves for the action to be dismissed.

### STANDARD OF REVIEW

██ When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, the plaintiff has the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991). Where jurisdiction is challenged under a claim of sovereign immunity, "[t]he party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995) (citing *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984)). In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings. *See Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.;*

*see also Richland–Lexington Airport Dist. v. Atlas Properties,* 854 F.Supp. 400, 407 (D.S.C.1994) (cogently explaining the differences between dismissal procedure under Rule 12(b)(1) and summary judgment under Rule 56(c)).

## ANALYSIS

■ As a threshold matter, the court finds that Plaintiffs' causes of action arise from the alleged misconduct of TCMM and its sublessees. Plaintiffs, noting that the United States "is the owner of the property" and "continues to hold an interest in the control and management of the property," [3] claim that the Lease created a "partnership" or "joint venture" between the United States and the private developers, such that the developers are agents of the United States. As such, Plaintiffs assert that the United States is liable for the tortious conduct of its agents, the developers. (Pl. Memo. at 6.) In contrast, the United States asserts that Plaintiffs' complaint alleges misconduct only of the activities of independent contractors of the United States. Accordingly, the United States asserts that this court lacks subject matter jurisdiction because the United States is not subject to suit for the tortious conduct of its independent contractors.

■ It is undisputed that the United States, as sovereign, is immune from suit unless it has consented to be sued. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The FTCA, which constitutes a limited waiver

---

**3.** Plaintiffs are misguided in asserting that the United States is liable by virtue of its ownership of the Air Station. The passive ownership of the Air Station does not impose liability on the United States if all injuries to the Plaintiffs are alleged to have been caused by the construction and pumping performed on the Air Station. *See Grine v. Coombs,* 214 F.R.D. 312 (W.D.Pa.2003) (holding that passive ownership of land does not impose liability absent evidence of owner's active participation in the contamination); *McQuilken v. A & R Development Corp.,* 576 F.Supp. 1023, 1033 (E.D.Pa.1983) (holding that in determining liability for a nuisance, "ownership of the property upon which the nuisance is created is not determinative"). Liberally construing Plaintiffs' complaint, the court finds that Plaintiffs assert that their injuries arose from construction and pumping performed on the Air Station, and further finds that the United States is not liable merely by virtue of its passive ownership of the Air Station.

The court further notes that in their Memorandum, Plaintiffs allege that the United States is liable by virtue of its contractual duty to own and maintain the storm water drainage and street systems of the Air Station. (Memo at 9; Lease, ¶¶ 19.5; 19.6.) In their Complaint, Plaintiffs allege that all Defendants, including the United States, were "acting in a willful wanton, reckless, negligent, and grossly negligent manner ... (e) in know-

ingly and/or negligently failing to adequately maintain the drainage system *affecting the Plaintiffs' property;*" however, Plaintiffs do not allege that the water drainage systems within the Air Station were "affecting Plaintiffs' property." Throughout the Complaint, Plaintiffs assert that the County of Beaufort "knew or should have known that the Plaintiffs' property would flood due to their negligence in designing, constructing, and maintaining the storm water drainage system *for the Pinewood subdivision and more particularly surrounding the Plaintiffs' property.*" (Complaint ¶ 31.) Elsewhere, the Complaint states that Plaintiffs were damaged by "inadequate and insufficient drainage and flood control systems *for the community*" and failure "to design maintain, or construct a reasonable and adequate drainage system *within the County.*" (Complaint ¶¶ 33, 34.) No where in their Complaint or in their Memorandum do Plaintiffs allege that the water drainage system maintained by the United States was a cause of their injury. The court therefore finds that Plaintiffs' asserted cause of action for negligently maintained water drainage system refers to the Beaufort County drainage systems, not the drainage systems within the Air Station. As such, all claims Plaintiffs assert against the United States (draining, redirecting water, pumping water, altering neighboring roads, negligently building, etc.) clearly arose from the conduct of TCMM and its subcontractors.

of sovereign immunity, allows actions for damages against the United States for injuries caused by tortious conduct of United States agents or employees acting within the scope of their employment. 28. U.S.C. § 1346(b). The FTCA is strictly construed, and all ambiguities are resolved in favor of the United States. *Radin v. United States*, 699 F.2d 681 (4th Cir.1983). Exceptions to immunity are narrow. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The limited waiver of the United States's sovereign immunity is restricted to acts or omissions of agents or employees of the government. 28 U.S.C. § 2671. The FTCA contains no waiver of sovereign immunity for the acts or omissions of independent contractors. *Goewey v. United States*, 886 F.Supp. 1268, 1276–1277 (D.S.C.1995). If, therefore, TCMM, TMH, and Actus are independent contractors, as the United States asserts, and not agents or employees of the United States, the United States has not waived its sovereign immunity and the case should be dismissed for want of jurisdiction under Rule 12(b)(1). *Williams*, 50 F.3d 299; *Goewey*, 886 F.Supp. 1268.

▇▇▇▇ TCMM, TMH, and Actus's classification as independent contractors or as agents or employees of the United States is an issue controlled by federal, not state, law. *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). Under federal law, in determining whether an actor is an independent contractor versus an agent of the government, the material consideration is the terms of the contract defining the relationship between it and the United States. *Williams*, 50 F.3d 299; *Wood v. Standard Prods. Co.*, 671 F.2d 825 (4th Cir.1982); *Goewey*, 886 F.Supp. at 1276–1277.

In *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), the

Supreme Court noted that the FTCA recognized the distinction between an actor's liability for its own employees' actions, and its non-liability for the actions of a party with whom the employer contracts. *Id.* at 528, 93 S.Ct. 2215. The distinction turns on the actor's authority to control the physical conduct of the purported independent contractor. *Id.* Applying that principle, the Court in *Logue* found a state jail an independent contractor of the United States because, according to the contract between the parties, the United States had "no authority to physically supervise the conduct of the jail's employees." *Id.* at 530, 93 S.Ct. 2215. Importantly, in *Logue* the Court found that the United States' right to inspect the jail and demand compliance with federal regulations did not transform the jail into an agent of the United States.

Similarly, in *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), the Court reaffirmed the *Logue* test of physical control and held that a community agency funded under a federal act was not a federal agent for purposes of the FTCA. Because no evidence showed the United States had the power to "control the detailed physical performance of the contractor," *id.* at 814, 96 S.Ct. 1971, the Court found independent contractor status notwithstanding that the United States set specific conditions to implement federal objectives and compelled compliance with federal standards.

In a Fourth Circuit case addressing the import of *Logue* and *Orleans*, the court observed:

> Read together, *Logue* and *Orleans* establish the principle that the United States will not be liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States ac-

tually supervises the "day-to-day operations" of the endeavor.... The First Circuit succinctly explained this rubric in opining that "[t]he right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors." ... [D]etermining whether the responsible party was an independent contractor or an agent or employee of the United States hinges on "the primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Williams v. United States*, 50 F.3d 299, 306 (4th Cir.1995) (citations omitted). In *Williams*, the plaintiff brought a slip and fall claim against the Government for injuries sustained in the lobby of a federal building. The Government impleaded the third-party defendant Meridian Management Corporation, which had a contract with the United States to perform custodial and maintenance services in the building. In affirming the trial judge's determination that Meridian was an independent contractor, the Fourth Circuit cited with approval cases finding no governmental liability under the FTCA, even where the United States "[a]cted generally as an overseer," *see Leone v. United States*, 910 F.2d 46 (2d Cir.1990), where the United States "owned and controlled" the premises on which the challenged conduct occurred, *see Larsen v. Empresas El Yunque, Inc.*, 812 F.2d 14 (1st Cir.1986), or where the United States had a significant role in supervising the activities leading to the plaintiff's injuries, *see Kramer v. United States*, 843 F.Supp. 1066 (E.D.Va.1994).

In this case, the United States entered a Lease with TCMM for the development of the housing units which allegedly caused the flooding damage to Plaintiffs' property. Accordingly, the relationship between the United States and TCMM and its subcontractors is controlled by the terms of this contract between the parties. Plaintiffs assert that, under the Lease and applicable sections of the MHPI, the United States had sufficient authority to control TCMM's construction and management of the Air Station such that TCMM is a "partner" or agent of the United States.

After a thorough inspection of the Lease between the Department of the Navy and TCMM, the court finds that the United States did not have sufficient authority to control TCMM so as to be liable under the FTCA. Although Plaintiffs broadly assert that the United States exerts "ownership and control" over the Air Station, the Lease makes it clear that the United States was not involved in the day-to-day operations of the construction or management of the housing units. According to the Lease, the United States' involvement in the construction project was limited to inspecting the site for compliance with federal standards, and some limited duty to maintain common areas within the Air Station. (Lease, ¶¶ 12.2.4; 12.2.18; 13.6; 15.1; 19.6; 19.6.) During the construction of the housing units, the United States had a limited right to inspect "from time to time" the construction site for compliance with federal safety and environmental standards. (Lease, ¶ 13.6.) After construction was completed, the United States had an even more limited role in the operation of the Air Station, as it could only inspect the premises "upon reasonable notice to [TCMM]." (Lease, ¶ 12.2.4.) Such a limited right to inspect has been consistently held to be insufficient to justify a finding of agency. *See Williams*, 50 F.3d at 306; *Leone*, 910 F.2d at 46; *Larsen*, 812 F.2d at 14; *Abrams–Fogliani v. United States*, 952 F.Supp. 143, 145 (E.D.N.Y. 1996) ("In general, a contract by which the government requires compliance with its rules and regulations, reserves to itself broad supervisory powers, or retains the right to inspect does not confer upon it the

degree of control sufficient to support a finding of jurisdiction under the FTCA.").

Further, the terms of the Lease required TCMM to maintain liability insurance coverage naming the United States as an additional insured, and to indemnify and defend the United States from all suits related to any activity arising from the Lease. (Lease, ¶ 16.2.) Many courts construe such provisions as evidence the lessee is an independent contractor, not an agent or employee. *See e.g., Larsen v. Empresas El Yunque, Inc.*, 812 F.2d 14, 16 (1st Cir.1986); *Abrams–Fogliani*, 952 F.Supp. at 146 ("Additionally, the lease requires the City to obtain and maintain liability insurance, a provision found by many courts to evidence that the lessee acted as an independent contractor."); *De Blasio v. United States*, 617 F.Supp. 1004, 1006–07 (E.D.N.Y.1985).

Because Plaintiffs have offered no evidence that would allow a reasonable inference that TCMM was anything other than an independent contractor, the court concludes that Plaintiffs may not recover against the United States based upon a theory of agency or partnership. Accordingly, the court finds that Plaintiffs have failed to satisfy their burden of showing the United States has unequivocally waived its sovereign immunity, and therefore dismisses the claims against the United States. Where the claims that satisfied federal jurisdiction have been dismissed for lack of subject matter jurisdiction, leaving the "pendent" state claims without their jurisdictional host, the court may, in a case begun in the federal court, dismiss the remaining claims without prejudice. 28 U.S.C. § 1367(c).

### CONCLUSION

It is therefore **ORDERED** that Defendant United States' Motion to Dismiss is **GRANTED**. This case hereby is DIS-MISSED **without prejudice** for lack of subject matter jurisdiction.

**AND IT IS SO ORDERED.**