ROTH, Circuit Judge,
Dissenting:
The majority’s decision to affirm the dismissal of the appellants’ statutory claim turns on two assumptions, both of which relate to McClintoek’s and Cherryhill’s status as independent contractors. The first assumption critical to the outcome reached by the majority is its factual determination that McClintock and Cherryhill did not have a “pre-existing commercial relationship” with *818 Southern Alleghenies. Majority Op. at 815-16. The second is the majority’s conclusion that, without such a pre-existing commercial relationship, the appellants cannot assert a claim under 42 U.S.C. § 1983 based on the appellees’ failure to grant them a public contract for allegedly partisan reasons. Majority Op. at 815-16. For the reasons set forth below, I find that the Supreme Court’s First Amendment jurisprudence does not support the kind of status-based limitation on individuals’ rights of political expression and association that the majority’s decision endorses.[1] Therefore, I respectfully dissent from the majority’s decision to affirm the District Court’s dismissal of the appellants’ § 1983 claim.
The majority’s understanding of the constitutional significance of the appellants’ status as independent contractors rests primarily on language from Board of County Comm’rs v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). This understanding arises from two sentences that appear in the penultimate paragraph of the opinion. The Supreme Court writes: “Finally we emphasize the limited nature of our decision today. Because Umbehr’s suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship.” Id. at 685, 116 S.Ct. 2342. The majority reads this language as categorically restricting claims by independent contractors, who allege that partisanship improperly influenced the awarding of a public contract, to those independent contractors who can demonstrate a business relationship with the government prior to the alleged unconstitutional incident.
The majority’s reliance on this language regarding a “preexisting commercial relationship” is misplaced. This language is dictum. More importantly, the majority’s emphasis upon it diminishes the central proposition for which Umbehr stands: namely, the Court’s “recognition] [of] the right of independent contractors not to be terminated for exercising their First Amendment rights.” Id. at 685, 116 S.Ct. 2342; see also O’Hare Truck Serv. v. City of Northlake, 518 U.S. at 723-26, 116 S.Ct. 2353.
Moreover, the majority’s emphasis on this language obscures the relevance of the many cases in which the Court has considered the First Amendment rights of government employees. E.g. Rutan v. Republican Party of Illinois, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Mount Healthy City School District Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). In these cases, the Court made clear that the “unconstitutional conditions” doctrine extends to government employees. See Perry, 408 U.S. at 597 (“[The government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests — especially his ... freedom of speech.”); Rutan, 497 U.S. at 72-75, 110 S.Ct. 2729 (holding that hiring, promotions, transfers, and recalls of low-level public employees based on partisan affiliation or association violate the First Amendment); Branti, 445 U.S. at 518, 100 S.Ct. 1287 (holding that public defender could not discharge assistants because of their political affiliation without violating the First Amendment); Elrod, 427 U.S. at 351, 96 S.Ct. 2673 (holding that sheriffs discharge of non-civil service office staff because of their political affiliation violated the First Amendment). The only exception to this rule is when political affiliation is a reasonably appropriate requirement for the job in question. See e.g. Pickering, 391 U.S. at 568-74, 88 S.Ct. 1731 (establishing fact-sensitive and deferentially administered balancing *819 test for determining if government’s interests are sufficiently compelling to overcome public employees’ First Amendment rights).
None of these cases state, or reasonably should be taken to imply, that the ability of independent contractors to bring suit against governmental employers for violation of their First Amendment rights is categorically distinct from that of government employees. Rather, this precedent leads logically to the conclusion that independent contractors, like government employees, may not be disfavored by state actors in the employment process on grounds that offend the First Amendment. As best understood under the present state of the law, independent contractors enjoy essentially the same right to sue as do employees of the government who claim to have been denied employment for partisan reasons. Established in O’Hare, 518 U.S. at 723-26, 116 S.Ct. 2353, and Umbehr, 518 U.S. at 674-76, 116 S.Ct. 2342, the rule that independent contractors may not be discharged by government employers for exercising their First Amendment Rights evolved directly from the line of cases, cited supra, in which the Court considered the First Amendment rights of government employees. See e.g. Umbehr, 518 U.S. at 674-77, 116 S.Ct. 2342 (discussing government employee cases); O’Hare, 518 U.S. at 718-21, 116 S.Ct. 2353 (same).
In O'Hare and Umbehr the Court explained that it was extending the rule established in the government employee cases to actions involving independent contractors because it found no difference of “constitutional magnitude” between these two categories of workers. See Umbehr, 518 U.S. at 679, 116 S.Ct. 2342 (quoting Lefkowitz v. Turley, 414 U.S. 70, 83, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)); O’Hare, 518 U.S. at 722, 116 S.Ct. 2353 (same). For the purpose of determining if the First Amendment restricts the freedom of governments to terminate their relationships with independent contractors, the Court found the similarities between government employees and government contractors “obvious”; moreover, it found the “threat of loss” the same to each in the event of governmental retaliation on grounds that violate their right to free expression. Umbehr, 518 U.S. at 674, 116 S.Ct. 2342; accord O'Hare, 518 U.S. at 721-23, 116 S.Ct. 2353. “Because of these similarities,” the Court looked to the government employee precedents “for guidance,” Umbehr, 518 U.S. at 674, 116 S.Ct. 2342, and “appl[ied] ... the existing framework for government employees cases to independent contractors.” Id. at 677, 116 S.Ct. 2342.
To the extent that salient differences between these classes of workers exist in individual cases, the Umbehr Court found “no reason to believe that proper application of the Pickering balancing test cannot accommodate” them. Id. at 678, 116 S.Ct. 2342. As a result, the Court rejected a brightline rule distinguishing the rights of independent contractors and employees because “whether state law labels a government service provider’s contract as a contract of employment or a contract for services” is “at best a very poor proxy for the interests at stake.” Umbehr, 518 U.S. at 679, 116 S.Ct. 2342; see also O'Hare, 518 U.S. at 722, 116 S.Ct. 2353 (“We can see no reason ... why the constitutional claim here should turn on the distinction [between independent contractors and employees], which is, in the main, a creature of the common law of agency and torts.”). Because “such formal distinctions ... can be manipulated largely at the will of the government,” the Court rejected the idea of determining constitutional claims on the basis of them. Umbehr, 518 U.S. at 679, 116 S.Ct. 2342 (citing Logue v. United States, 412 U.S. 521, 532, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)). “Independent contractors, as well as public employees, are entitled to protest wrongful government interference with then-rights of speech and association,” the O'Hare Court stated. 518 U.S. at 723, 116 S.Ct. 2353. Thus, contrary to the reasoning of the majority and the result it reaches in this case, the Court expressly has stated the view that independent contractors should be treated the same as employees of the government for purposes of First Amendment analysis.
Consequently, while it is true that the Court has not explicitly addressed the nature of independent contractors’ right to sue on First Amendment grounds when they are considered applicants for new contracts, rather than as having pre-existing business relationships with the government, the infer *820 ence to be drawn from Umbehr and O’Hare is clear. Given these holdings and the reasoning that the Court employed in reaching them, it is logical to conclude that all independent contractors fall within the standard set forth in Umbehr, in O’Hare, and in the government employee cases. The opposite inference, that this precedent should be understood to bar suits by contractors who are applicants for new contracts, is not logical.
The propriety of the inference that I suggest is inescapable in light of Rutan, 497 U.S. at 66-68, 110 S.Ct. 2729, the case in which the Court considered whether hiring, promotions, transfers, and recalls based on government employees’ political affiliation or support could be considered impermissible infringements on their First Amendment rights. The Court answered this question in the affirmative, id. at 74-77, 110 S.Ct. 2729, thereby extending the rule established in Branti, 445 U.S. at 518, 100 S.Ct. 1287, and Elrod, 427 U.S. at 351, 96 S.Ct. 2673, relating to politically motivated terminations. In so doing, the Court rejected the argument that hiring, promotions, transfers, and recalls were “different in kind” from the terminations involved in Elrod and Branti because, it reiterated, the law is clear that entitlement to employment is immaterial to a government employee’s First Amendment claim. Rutan, 497 U.S. at 71-72, 110 S.Ct. 2729 (“For at least a quarter-century, this Court has made clear that even though a person has no ‘right’ to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit ... on a basis that infringes his ... interest in freedom of speech.”) (citing Perry, 408 U.S. at 596-98, 92 S.Ct. 2694). In this way, the Court rejected the argument that an alleged impermissible infringement upon an employee’s First Amendment right must occur in the form of a “substantial equivalent of dismissal.” Id. at 75, 110 S.Ct. 2729. “[Tjhere are deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs ... to some state-selected orthodoxy,” the Court found. Id. (emphasis added). In my judgment, the fact that the Court expressly held that the same concerns that animated the rules in Elrod and Branti, regarding terminations, were present with respect to hiring in Rutan undermines the logic embraced by the majority. Id. at 78, 110 S.Ct. 2729 (“Under our sustained precedent, conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so.”).
Ultimately, it may be difficult for independent contractors like McClintock and Cher-ryhill to prove that the government violated their First Amendment rights during the employment process. This is so because a public employee who makes such a claim bears the burden of demonstrating that the alleged violation was a motivating factor in his failure to attain a contract. See Mount Healthy, 429 U.S. at 283-87, 97 S.Ct. 568. This burden would appear more difficult to discharge in cases where a contractor has not had an on-going relationship with the government, prior to applying for a contract. This matter is, however, one to be resolved by the trial courts. The point here is that the government is not entitled per se to a denial of liability simply because an independent contractor, who makes such a claim, is bidding on a new contract. See Umbehr, 518 U.S. at 678, 116 S.Ct. 2342.

. The majority also concludes that, before the District Court, appellants relied solely on the theory that they had an on-going relationship with Southern Alleghenies. Because, however, the District Court found that appellants were not regular providers of services and, therefore, not entitled to Elrod and Branti protection, I conclude that the issue, as I set it out above, is fairly before this Court.