Ophelia BETHAE, as personal
representative of the Estate
of Jerry Bethae, Plaintiff,

v.

UNITED STATES of America; Darlington County Detention Center; Kenny Lynch, individually and/or in his capacity as Director of Darlington County Detention Center; Diane Sheffield Wilkes, individually and/or in her official capacity; Lawrence Flynn, individually and/or in his offi-

cial capacity; Catherine W. Avinger, individually and/or in her official capacity; Charles Smith, Jr., individually and/or in his official capacity; and the South Carolina Department of Corrections, Defendants.

C.A. No. 4:05–2683–PMD.

United States District Court,
D. South Carolina,
Florence Division.

Dec. 12, 2006.

J.C. Nicholson, III, James C. Anders and Associates, Thad Lee Myers, Whetstone Myers Perkins and Young, Columbia, SC, Malcolm Duane Shuler, Whetstone Myers Perkins & Young, Kingstree, SC, for Plaintiff.

Barbara Murcier Bowens, U.S. Attorneys Office, Columbia, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant United States of America's ("Defendant") Motion to Dismiss. For the reasons set forth herein, the court grants Defendant's motion.

## BACKGROUND

On September 2, 2003, the decedent, Jerry Bethae ("Bethae"), was arrested by the Bureau of Alcohol, Tobacco and Firearms for felony possession of a firearm. On this date, he was remanded to the custody of the United States Marshals Service ("USMS") and placed at the Florence County Jail ("FCJ") in Florence, South Carolina. After receiving a letter from Bethea's attorney expressing concerns that Bethea did not have access to an inhaler for his asthma at FCJ, the USMS transferred Bethae to Darlington County Detention Center ("DCDC") located in Darlington, South Carolina, on September 12, 2003. Bethea was transferred to DCDC because inmates at that facility are allowed to have inhalers on their person. On or about January 5, 2004, USMS received a second letter from Bethea's attorney stating that Bethea had been complaining that he did not have access to his asthma medicine at DCDC. According to Defendant, "[t]he DCDC assured the USMS that Mr. Bethea was receiving his needed medication and that refill inhalers would be ordered if needed." (Defendant's Mot. to Dismiss at 3.)

On January 20, 2004, while at the DCDC, Bethea had trouble breathing and collapsed. The DCDC took Bethae to the Carolina Pines Hospital for treatment, where he was pronounced dead that same day. An autopsy ruled that he died as a result of asphyxia "due to or a consequence of Status Asthmaticus or Bronchial Asthma," and his death was classified as natural. (Defendant's Exhibit 9.)

The Plaintiff in this action is Ophelia Bethae ("Plaintiff"), personal representative of the Estate of Jerry Bethae. In her Complaint, Plaintiff states,

> As a direct and proximate result of the negligence of the Defendant, acting through its agents, servants and employees, . . . the decedent received improper and inadequate treatment for his chronic asthma condition over a period of approximately four (4) months, during which time his condition worsened, ultimately resulting in a severe asthma from which he died.

(Complaint ¶ 16.) More specifically, some of the allegations Plaintiff makes against Defendant include allegations that Defendant was negligent in failing to ensure Bethea "properly and continuously received his asthma medication," in "failing to procure [Bethea's] medications when it knew or should have known which medications were needed," and in failing to institute "procedures necessary to ensure that inmates were provided basic medical care and attention when needed." (Complaint ¶ 14.)

On November 21, 2005, Defendant filed a Motion to Dismiss pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure.[1] In the motion, Defendant argues subject matter jurisdiction does not exist because "[t]he independent contractor defense and the discretionary function exception to the [Federal Tort Claims Act] are applicable to the instant action ..." (Defendant's Mot. to Dismiss at 8.) Plaintiff responded on December 9, 2005, first asserting the independent contractor defense is not applicable: "The Government's focus on the independent contractor defense arises from it's [sic] belief that Plaintiff's claims are only against the Darlington County Detention Center for medical negligence. However, Plaintiff's claims are against the defendant through the United States Marshals Service for its own independent negligence via its own employees." (Plaintiff's Mem. in Opposition at 2.) Plaintiff notes she is bringing suit against Defendant because it breached the independent duty to "provide for the safekeeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. § 4086.

In responding to the Motion to Dismiss, Plaintiff also argues the discretionary function exception is not applicable because "[t]he Government cannot seriously argue that it is a matter of choice as to whether it must ensure access to proper health care, via facility transfer, for basic medical conditions for inmates under its custody and control." (Plaintiff's Mem. in Opposition at 4.) Plaintiff also asserts the discretionary function exception is not ap-

plicable because "the decision to transfer Mr. Bethea cannot be said to have been grounded in any social, political, or economic policy." (Plaintiff's Mem. in Opposition at 5.)

Defendant filed a reply on December 16, 2005, again asserting the independent contractor exception is applicable because "there is no allegation that the USMS was involved in the 'day-to-day operations' of the Darlington County Detention Center ..." (Defendant's Reply at 4.) Defendant again asserts the discretionary function exception is applicable because although Defendant did not have a choice over whether to provide care, it did have a choice in the manner in which to provide that care. (Defendant's Reply at 9.)

## STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

---

1. The motion filed on November 21, 2005 also states that Defendant moves the court to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to grant summary judgment in favor of Defendant. (*See* Defendant's Mot. to Dismiss at 1.) However, because all of Defendant's arguments in this motion concern subject matter jurisdiction, and because this court finds subject matter jurisdiction lacking, the court addresses only Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## *ANALYSIS*

### A. Independent Contractor Exception

■ Plaintiff brought this action against Defendant pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* Pursuant to that Act,

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). This section "contains a limited waiver of the United States's sovereign immunity, allowing a plaintiff to sue the United States for damages in compensation for injuries resulting from certain torts of employees of the government acting within the scope of their employment." *Robb v. United States,* 80 F.3d 884, 887 (4th Cir.1996). Because "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, ... the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

The waiver of immunity in 28 U.S.C. § 1346(b)(1) only applies to an "employee of the Government while acting within the scope of his office or employment." *See* 28 U.S.C. § 1346(b)(1). Under the FTCA, an "employee" includes "officers or employees of any federal agency, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. The term "federal agency" includes "the executive departments, the judicial and legislative branches ... but does not include any contractor with the United States." *Id.*

■ Because this limited waiver of sovereign immunity only applies to employees of the government, if the conduct in question was performed by an independent contractor, the district court does not have subject matter jurisdiction over the action. *See Robb,* 80 F.3d at 887 n. 2; *see also Wood v. Standard Prods. Co.,* 671 F.2d 825, 829 (4th Cir.1982). To determine whether a person is an independent contractor or an employee, a district court must look to federal law. *See Robb,* 80 F.3d at 887.

The Supreme Court, in *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), announced a test for distinguishing between an employee and an independent contractor for purposes of the FTCA. In that case, a federal prisoner was confined in a county jail awaiting trial, and while incarcerated in that jail, the prisoner hung himself. *Id.* at 522, 93 S.Ct. 2215. His surviving parents brought suit under the FTCA, claiming the negligence of the government's agents and employees proximately caused their son's death. *Id.* The county jail was one of "some 800 institutions operated by state and local governments that contract with the Federal Bureau of Prisons to provide for the safekeeping, care, and subsistence of federal prisoners." *Id.* at 523, 93 S.Ct. 2215.

In determining that the county jail's employees were independent contractors of the United States, the Court said the distinction between employees and independent contractors "turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in per-

formance of the contract." *Id.* at 527, 93 S.Ct. 2215. The Court examined the statute authorizing contracts with local jails and the contract between the local jail and the Federal Bureau of Prisons, ultimately concluding the jail was an independent contractor because the United States had "no authority to physically supervise the conduct of the jail's employees." *Id.* at 530, 93 S.Ct. 2215. The Court reached this result despite the fact that the United States retained the right to inspect the jail and demand compliance with federal regulations. *Id.* at 529–30, 93 S.Ct. 2215. Thus, the inquiry "is not whether the … agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

In the case *sub judice*, Defendant argues it cannot be held liable for the allegedly tortious actions of the local jails because the local jails are independent contractors. (Defendant's Mot. at 9.) Based on her Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff does not appear to contest this argument. Rather, Plaintiff asserts the independent contractor defense is not applicable because "Plaintiff's claims are against the defendant through the United States Marshals Service for its own independent negligence via its own employees." (Plaintiff's Mem. in Opposition at 2.) Plaintiff notes she is bringing suit against Defendant because it breached the independent duty to "provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. § 4086.

To the extent Plaintiff is bringing suit against Defendant for negligence arising out of the operation of the DCDC, subject matter jurisdiction depends on whether the DCDC is an employee of the federal government or an independent contractor. Although the USMS has a duty to provide for the safe-keeping of any person arrested, it also has the authority to contract with state or local jails to house federal prisoners. *See* 18 U.S.C. §§ 4002, 4013; 28 C.F.R. § 0.111(*o*). Furthermore, examining the contract between the DCDC and the USMS (the "Contract") reveals that the USMS did not have the authority to control DCDC's physical conduct in performing the contract. (*See* Defendant's Exhibit 12 to Mot. to Dismiss.)

Pursuant to the Contract, DCDC "agrees to accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local law, standards, policies, procedures, or court orders applicable to the operations of the facility." (Defendant's Exhibit 12 to Mot. to Dismiss.) Article III of the Contract is the provision on medical services: "The Local Government agrees to provide federal prisoners with the same level of medical care and services provided to local prisoners, including the transportation and security for prisoners requiring removal from the facility for emergency medical services." (Defendant's Exhibit 12 to Mot. to Dismiss.) Attached as Exhibit 10 to Defendant's Motion to Dismiss is a "Medication Dispension Form" from the DCDC showing which medications DCDC dispensed to Bethea from January 6, 2004 to January 19, 2004.

■ Examining the applicable statutes and the contract, this court determines DCDC is an independent contractor of the Defendant because Defendant did not have the authority to physically supervise the conduct of the DCDC's employees. Although Article XII of the Contract allowed for USMS inspectors to periodically inspect the DCDC facility, this fact was not

determinative in *Logue. See Logue,* 412 U.S. at 529–30, 93 S.Ct. 2215. Defendant did not supervise the DCDC's day-to-day operations, so this court determines the DCDC was an independent contractor. Because the DCDC was an independent contractor, this court does not have subject matter jurisdiction over the part of Plaintiff's suit against the United States alleging negligent conduct by the DCDC. *See Robb,* 80 F.3d at 887 n. 2. Plaintiff asserts, however, that "[t]he negligent act is the Government's negligent failure to transfer Mr. Bethea to another facility where he could receive proper medical care." (Plaintiff's Mem. in Opposition to Defendant's Mot. to Dismiss at 3.) Because this allegation specifically regards the USMS and its agents' acts, the independent contractor exception is not here applicable. The court will thus turn to determine whether the discretionary function exception prevents this court from having subject matter jurisdiction over Plaintiff's claim that Defendant was negligent in failing to transfer Bethea to another facility.

## B. Discretionary Function Exception

Another exception to the United States' waiver of sovereign immunity is the discretionary function exception, which has been called the "most important" exception. *McMellon v. United States,* 387 F.3d 329, 335 (4th Cir.2004). This exception provides that the United States is not liable for the following:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

■ In *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court articulated a two-part test for determining whether the discretionary function exception applies. First, the "exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If the action is not a matter of choice for the acting employee, the discretionary function exception will not apply. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. The exception is not applicable "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.*

Secondly, if the conduct does involve discretionary judgment, the court must then decide "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert,* 499 U.S.

at 323, 111 S.Ct. 1267 (internal citations and quotation marks omitted).

Defendant asserts the discretionary function exception applies in this case:

> To the extent that plaintiff's claim may be based on the USMS' decision to place Mr. Bethea at the DCDC, the drafting of policies and procedures regarding medical care, and decisions relating to supervision, monitoring and training of DCDC's employees, the plaintiff's claim is barred by the discretionary function exception to the FTCA.

(Defendant's Mot. to Dismiss at 15.) Plaintiff disagrees, stating that Defendant "cannot seriously argue that it is a matter of choice as to whether it must ensure access to proper health care, via facility transfer, for basic medical conditions for inmates under its custody and control." (Plaintiff's Mem. in Opposition to Defendant's Mot. to Dismiss at 4.)

■ This court agrees with Defendant. To the extent Plaintiff's claim is that Defendant was negligent in not transferring Bethea to another institution, that claim is barred by the discretionary function exception. In *Carter v. United States*, No. C/A 0:02–0880–18BD, 2002 WL 32332081 (D.S.C. Dec.13, 2002), Judge Norton confronted a similar issue. In *Carter*, the plaintiff was stabbed by another inmate a few days after the two argued over cultural and religious beliefs. *Carter*, 2002 WL 32332081, at *1. The plaintiff then filed a negligence action against the United States and the Federal Bureau of Prisons, alleging the United States was negligent "in not having transferred [the other inmate] to a higher security facility following

a previous assault of another inmate and that as a result, [plaintiff's] injuries were caused by the negligent or wrongful acts or omissions of employees of the federal government." *Id.* Judge Norton determined that the court lacked subject matter jurisdiction over the action pursuant to the discretionary function exception because the decision regarding a prisoner's location and security status was discretionary. *Id.* at *3. Judge Norton examined 18 U.S.C. § 4042 and 28 C.F.R. § 541.41 in making that determination but noted,

> Even were this court to determine that the discretionary function exception applies to the present case solely upon the language of 18 U.S.C. § 4042, the same result would follow. The mandatory duty of care set out in subsections 4042(a)(2) and (3) does not dictate the manner in which that duty must be fulfilled.

*Id.* at *5 (internal quotation marks and citation omitted).

Although Judge Norton was examining 18 U.S.C. § 4042,[2] and the statute at issue in the case *sub judice* is 18 U.S.C. § 4086,[3] this court finds Judge Norton's reasoning persuasive. The two code sections are very similar in that they both require the safekeeping of prisoners but neither specify the method for such safekeeping. This court thus finds that the first part of the *Gaubert* test is satisfied because the decision regarding where Bethea should be housed involved an element of judgment or choice. The fact that the USMS transferred Bethea from FCJ to DCDC on September 12, 2003, illustrates that the USMS had discretion in choosing where to house

---

2. "The Bureau of Prisons, under the direction of the Attorney General, shall—... provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise...." 18 U.S.C. § 4042.

3. "United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. § 4086.

Bethea. The USMS transferred Bethea because in its judgment, DCDC would be a better facility for him because that facility would allow him to keep an inhaler on his person. Because the decision over where to house Bethea involved an element of judgment or choice, the first part of the *Gaubert* test is satisfied.

The second part of the *Gaubert* test requires this court to determine whether this judgment is the kind that the discretionary function exception was designed to shield.

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert,* 499 U.S. at 324–25, 111 S.Ct. 1267. In asserting "the decision to transfer Mr. Bethea cannot be said to have been grounded in any social, political, or economic policy," Plaintiff stresses that budgetary concerns are frequently the reason the discretionary function exception applies in the Fourth Circuit. (Plaintiff's Mem. in Opposition at 5.) Plaintiff is correct in asserting the discretionary function exception frequently applies to decisions regarding budgets. *See, e.g., Williams v. United States,* 50 F.3d 299, 309–10 (4th Cir.1995). However, the discretionary function exception is not so limited. *See, e.g., Suter v. United States,* 441 F.3d 306,

311–12 (4th Cir.2006) (concluding that the a decision by the Federal Bureau of Investigation regarding "whether, as part of its investigation, to participate in criminal activity likely to result in financial loss to third parties" was grounded in policy considerations).

This court finds the second part of the *Gaubert* test is satisfied. First, as this court interprets 18 U.S.C. § 4086 as implicitly conferring discretion on the USMS in making decisions regarding Bethea's safekeeping, it is presumed that the USMS's acts are grounded in policy. *See Gaubert,* 499 U.S. at 324, 111 S.Ct. 1267. Secondly, even without the presumption, the decision of where to house an inmate is subject to public policy analysis. *See, e.g., Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir.1995) ("The Bureau of Prisons' approval of transfer of inmates to halfway houses is entwined with the social considerations of integrating prisoners into society."). According to Supervisory Deputy United States Marshal Matthew Dell, in determining which local jail will be used to house a federal detainee, several factors are considered, including available bed space at the jails, proximity to the federal courthouse, the transportation burden on the USMS, and the detainee's medical needs. (Declaration of Matthew Dell ¶ 6.) Accordingly, this court determines that the decision regarding transferring an inmate to another facility is the kind that the discretionary function exception was designed to shield. The discretionary function exception thus bars Plaintiff's claim against the United States for failing to transfer Bethea to another facility.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant United States of America's Motion to Dismiss for

lack of subject matter jurisdiction is GRANTED.

AND IT IS SO ORDERED.