**Todd A. RICHARDSON, individually and on behalf of a class of borrowers similarly situated, Plaintiff–Appellant,**

v.

**NATIONAL CITY BANK OF EVANSVILLE, Defendant–Appellee.**

No. 97–2775.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1998.

Decided April 23, 1998.

Andrew Ward, Berger & Berger, Evansville, IN, Michael P. Malakoff (argued), Malakoff, Doyle & Finberg, Pittsburgh, PA, M.

Scott Barrett, Plews, Shadley, Racher & Braun, Indianapolis, IN, for Plaintiff–Appellant.

David V. Miller (argued), Bowers, Harrison, Kent & Miller, Evansville, IN, for Defendant–Appellee.

Before CUMMINGS, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Todd Richardson financed the purchase of a car, and the National City Bank of Evansville (NCB) bought that debt. When Richardson financed the car, he promised to insure the vehicle, but he didn't. Accordingly, NCB bought insurance for the car and added the amount of the insurance premiums to the principal debt owed by Richardson. Richardson has sued, claiming that insurance premiums added to his debt constitute "interest" and the loan is therefore usurious. Concluding insurance premiums are not "interest," the district court dismissed the complaint for failing to state a claim. We affirm.

## I. Background

On May 26, 1988, Todd Richardson bought a 1988 Chevrolet Camaro from Cooke Chevrolet Company, a Chevrolet franchise dealership in Evansville, Indiana. Richardson financed the Camaro through the dealership. Richardson signed a "Retail Installment Contract and Security Agreement." The installment agreement provided that Richardson would pay the balance of $12,649.87 in 72 payments of $250.23, with an annual interest rate of 12.25%. The installment agreement included a provision which stated: "I [Richardson] promise to purchase property and liability insurance against such risks and in such amounts as you [Cooke Chevrolet or assignee] may designate...." It further provided that in the event that Richardson fails to provide insurance, Cooke or its assignee "may advance the money necessary to purchase the insurance ... add this amount to [Richardson's] credit obligation, and charge [Richardson] interest on this amount...."

After Richardson executed the loan agreement, Cooke Chevrolet assigned its interest in the note to NCB. Richardson made regular payments on his installment note, but did not obtain the required insurance for the Camaro. Between 1989 and 1994, because Richardson did not purchase insurance, NCB bought insurance coverage for the Camaro. As a result, NCB added about $1000 each year to the principal amount of the loan. Richardson paid interest on these premium amounts advanced by NCB. Richardson concedes that the charges added to his loan were equal to the net amounts paid by NCB in premiums. In other words, it is undisputed that NCB did not retain any revenue or compensation when purchasing the insurance; rather it charged Richardson only for those additional amounts paid to the insurance companies. However, as these payments were added to the principal balance of the loan, NCB became entitled to interest for these amounts advanced. In July 1994, as the term of the original loan expired, there was still a balance of approximately $8,900. Richardson refinanced the vehicle, agreeing to repay $8,967.60 over 60 months, in monthly payments of $200.68.

In June 1995, Richardson brought a class action lawsuit against NCB, alleging state law violations, usury violations under the National Bank Act, 12 U.S.C. §§ 85 and 86, and violation of the Anti–Tying Amendments, codified at 12 U.S.C. § 1972. The district court initially dismissed the Anti–Tying count, and Richardson has not appealed this decision. Subsequently, the district court granted the defendant's motion to dismiss the usury count under the National Bank Act, holding that the insurance premiums paid by the bank and added to Richardson's principal balance were not interest. Having dismissed the counts containing federal questions, the district court then declined to exercise pendent jurisdiction over the remaining state law counts. Richardson has filed a complaint in state court to resolve the state law claims. Thus, the only issue we face in this appeal is whether the insurance premiums bought by NCB and charged to Richardson are interest under the National Bank Act.

## II. Analysis

The National Bank Act provides that if a bank knowingly charges interest greater than that allowed under section 85, it forfeits the entire interest associated with the note. 12 U.S.C. § 86. Section 85 establishes the maximum allowable interest rate as the rate allowed by the law of the state where the bank is located.[1] 12 U.S.C. § 85. Indiana law establishes the maximum annual rate of interest to be 21%. I.C. 24–4.5–3–201(1). However, § 85 does not define what is interest and what is not interest. The Supreme Court (and thus the parties here) recognizes that in certain contexts the term "interest" can cause some ambiguity. *Smiley v. Citibank (South Dakota) N.A.*, 517 U.S. 735, 737–39, 116 S.Ct. 1730, 1732, 135 L.Ed.2d 25 (1996) ("It would be difficult indeed to contend that the word 'interest' in the National Bank Act is unambiguous....").

In 1996, the Office of the Comptroller of Currency promulgated Regulation 7.4001, interpreting the term "interest" as used in 12 U.S.C. § 85. 12 C.F.R. § 7.4001. As this case turns on the exact meaning of this regulation, we set out the entire relevant subsection:

> (a) Definition. The term "interest" as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numeric periodic rates, late fees, not sufficient funds (NSF) fees, over-limit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, *premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit*, finders' fees, fees for

document preparation or notarization, or fees incurred to obtain credit reports.

12 C.F.R. § 7.4001(a) (emphasis added). This regulation draws a distinction between fees which compensate the bank for extending credit, and fees which reimburse the bank for actual expenses associated with the loan.

The Supreme Court addressed Regulation 7.4001(a) in *Smiley*. *Smiley* involved the question of whether late fees, *i.e.* additional fees charged borrowers who fail to make timely payments, are "interest" under § 85. The Supreme Court unanimously held that "interest" as used in § 85 was ambiguous, and the interpretation given "interest" by the Office of the Comptroller of the Currency was entitled to deference pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Smiley*, 517 U.S. at 737–41, 116 S.Ct. at 1732–33.[2] The Supreme Court held that late fees were interest under § 7.4001(a). It further commented that the regulation draws a distinction "between those charges that are *specifically assigned* to such expenses [as insuring the loan,] and those that are assessed for simply making the loan, or for the borrower's default," the latter being interest; the former, not. 517 U.S. at 741–42, 116 S.Ct. at 1734 (emphasis in original). Thus, customer charges unrelated to a specific expense incurred by the bank were termed interest; charges related to a specific expense were excepted.

While *Smiley* did not specifically address insurance premiums except in dicta, the Eighth Circuit recently addressed the exact arguments made by the plaintiff in this case.[3] In *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1303 (8th Cir.1997), as in our case, a consumer bought a vehicle and failed to insure it. After the bank purchased insurance and added the premiums to the

---

1. This is true unless the state has no fixed maximum interest rate, or the discount rate on ninety-day commercial paper in effect at the Federal Reserve Bank in the bank's district, plus one percent, is higher than the state's maximum interest rate. 12 U.S.C. § 85. The parties agree that neither of these exceptions applied during the time period material to this case.

2. The parties agree that Regulation 7.4001 is reasonable and entitled to deference.

3. Counsel for Richardson also represented the plaintiffs in the Eighth Circuit.

consumer's loan balance, the consumer sued the bank, claiming a usury violation under the National Bank Act. The Eighth Circuit held that "there is a notable difference between a late fee, which compensates the creditor solely for the effects of the debtor's default, and an insurance charge, which compensates the creditor for the cost of protecting its security, a cost the debtor is supposed to bear anyway." *Id.* We agree with the Eighth Circuit, and would further comment that the insurance charge is really a reimbursement.[4] The bank is not at all enriched by the purchase of force placed insurance. Rather, it is incurring an expense which the borrower had promised to pay, thus requiring it to add the cost of the insurance to the borrower's principal loan balance. Moreover, the bank apparently does not pass on the administrative cost of having an employee obtain insurance on its customer's vehicle.

There is a further distinction between force placed insurance and late fees or other default charges. The insurance benefits both the creditor and the borrower. *See Norwest Bank,* 107 F.3d at 1303. In the event that the Camaro is stolen, for example, the amount Richardson would owe the bank would be reduced by the amount of insurance proceeds. In contrast, the late fee only benefits the bank; its payment is not of benefit to the borrower.

█ Richardson contends that the bank's purchase of force placed insurance resulted from his default, and that therefore adding the cost of the insurance to his loan balance results in a default charge, which would be interest under Regulation 7.4001(a) (interest "includes any payment compensating a creditor [for] any default or breach by a borrower of a condition upon which credit was extended."). However, this argument ignores the distinction made by the regulation, and approved by the Supreme Court and the Eighth Circuit. A default charge is interest,

if the charge results from the default. For this reason, the Supreme Court in *Smiley* held that late fees, imposed solely because a payment was not timely made, are interest. 517 U.S. at 741–43, 116 S.Ct. at 1734. If the default charge, however, *reimburses* the creditor for *expenses caused* by the default, the charge is not a default charge, and is not interest. The force placed insurance premium is a charge related to default, but the premium does not compensate the bank; it reimburses the bank for money the bank has advanced on behalf of its customer. Or, as the Supreme Court puts it, the charges are "specifically assigned" to such advancements. *Id.*

Accepting Richardson's argument would lead to unusual results. If a borrower failed to purchase insurance, a bank could only charge the defaulting borrower the difference between the loan's interest rate, and the maximum interest rate allowed by law. With high interest rate loans, the borrower would have a financial incentive to default on insurance, because the bank would subsidize the insurance payments. But this subsidy would not last long. The bank would repossess the borrower's car, sell the car for what it could get, and then sue the borrower for any difference between the loan amount and the sale proceeds. Richardson, purporting to represent a class of borrowers, is advocating a rule which could encourage banks to prematurely repossess cars, or to refuse to make more risky loans in the first place. It is doubtful such a rule would benefit many members of the plaintiff's class.

█ Additionally, Richardson contends that the list of fees which are not interest, *i.e.,* "appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization or fees incurred to obtain credit reports," is exhaustive and should be narrowly

---

4. As the Supreme Court noted in *Smiley,* "in the broadest sense all payments connected in any way with the loan [including] insuring the loan ... can be regarded as 'compensating [the] creditor for [the] extension of credit.' " 517 U.S. at 741–43, 116 S.Ct. at 1734 (quoting 12 C.F.R. § 7.4001(a) (brackets in original)). Thus, the Eighth Circuit is correct in calling the insurance premiums "compensation," but designating the charges based on the insurance premiums as reimbursements better captures the intent of Regulation 7.4001(a). The bank had to pay the premiums to the insurance company, so to be in the same position it would have been if Richardson had purchased the insurance as required, the bank is "reimbursed" for that amount.

construed. However, we are not persuaded that this regulation should be read in this manner. The regulation states examples of what is "included" when determining interest, followed by examples of what is "not ordinarily included" when determining interest. "Include" is a word of illustration, not limitation. *Cf. Enis v. Continental Illinois Nat'l Bank & Trust Co. of Illinois,* 795 F.2d 39, 42 (1986) ("The words 'include' and 'such as' show that the specific instances are illustrative, not exhaustive."). Although Richardson attempts to distinguish insurance premiums guaranteeing repayment from the force placed insurance, his discussion actually highlights the similarities in the insurance coverages (if, in fact, there are any differences). Richardson has been unable to show why force placed insurance is similar to late fees, cash advance fees, or other fees that are "included" as interest. The regulatory exclusion of "insurance guaranteeing repayment of any extension of credit" is a much closer fit.

Richardson also argues that NCB bought insurance that was broader than the contract required, and included coverage that was retroactive. Because the insurance premiums charged to Richardson are not interest, adding these charges to the loan balance do not result in usurious rate of interest prohibited by federal law, regardless of whether the bank bought the correct type of insurance. These allegations may prove a violation of state law, and Richardson has commenced a lawsuit in state court to prove this. However, the insurance premiums cannot be interest, and these allegations fail to state a claim under 12 U.S.C. § 86.[5]

### III. Conclusion

Richardson failed to maintain insurance on his Camaro. As Richardson and NCB agreed, NCB bought insurance for the Camaro, and added the cost of the insurance to Richardson's loan balance. Richardson's attempt to recharacterize this transaction as the charging of interest is contrary to the Comptroller's regulation interpreting the definition of interest. Interest does not in-

clude insurance premiums, and, therefore, Richardson's complaint does not state a claim upon which relief can be granted.

AFFIRMED.

---

5. Richardson concedes that the amounts added to his loan balance were exactly equal to the actual net amounts paid by NCB for force placed insurance. Thus, we do not reach the issue of whether any mark-up or profit which a bank may earn off of force placed insurance is interest.