In the

# United States Court of Appeals
### For the Seventh Circuit

No. 21-1631

ANNE TALIGNANI, as Special Administrator of the Estate of
David Talignani, deceased,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cv-1018 — **Mark A. Beatty**, *Magistrate Judge*.

SUBMITTED NOVEMBER 9, 2021* — DECIDED FEBRUARY 10, 2022

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. A patient died after surgery at a
university hospital and his estate sued the United States

* This case was originally set for oral argument, which the parties
jointly moved to waive. We granted their motion and this case was sub-
mitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(1) & (2)(C).

under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The Act waives sovereign immunity for certain torts committed by "employee[s] of the Government." Because the estate's claim does not involve a government employee, the district court correctly entered summary judgment for the United States.

**I**

David Talignani was a United States military veteran. In 2015, he consulted a neurosurgeon with the Department of Veterans Affairs Saint Louis Health Care System ("VA"). The neurosurgeon recommended that he undergo neck surgery, but because the VA could not perform a timely surgery, the surgeon suggested Talignani obtain "evaluation and treatment" at Saint Louis University Hospital ("Hospital"). Talignani agreed and expressed a preference for the Hospital because he had previously undergone a surgery there.

To begin the referral process, a nurse practitioner submitted an internal consult request seeking the VA's approval to secure treatment for Talignani at a non-VA provider. This request was granted, meaning the VA agreed to pay for "evaluation and treatment rendered pursuant to the non-VA provider's plan of care." The VA then sent a request for outpatient services to the Hospital. The Hospital agreed to treat Talignani and, in preparation, asked the VA to conduct several pre-operative tests. In January 2016, Dr. Phillippe Mercier performed neck surgery on Talignani using the Hospital's facility and staff. Talignani died shortly after being released.

As administrator of her deceased husband's estate, Anne Talignani (or "the estate") alleges her husband was "prescribed excessive pain medication prior to his discharge from St. Louis University Hospital," which proximately caused his

death. She first sought recourse by filing an administrative complaint with the VA, which was denied. Then, she filed this federal lawsuit. The government moved for summary judgment, arguing that her claim did not involve an "employee of the Government." In support of its motion, the government submitted two affidavits from VA employees; in response, the estate did not submit any evidence. The district court ruled for the government and this timely appeal followed. We review the district court's summary-judgment decision de novo. *Woodson v. United States*, 990 F.3d 515, 519 (7th Cir. 2021).

## II

The Federal Tort Claims Act "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing 28 U.S.C. § 1346(b)). "[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 141 S. Ct. 740, 749 (2021). So, failure to establish any element also eliminates the basis for subject matter jurisdiction. *Id.*

To establish a claim under the Act, the plaintiff must show, among other things, that his injury was caused by an "employee of the Government." 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477. Whether a person is an "employee of the Government" is "a pure question of law and a matter of statutory interpretation." *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995).

The statutory definition of "employee of the Government" at 28 U.S.C. § 2671 controls, even if it contradicts the phrase's ordinary meaning. *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) ("When a statute includes an explicit definition, we must

follow that definition, even if it varies from a term's ordinary meaning." (quoting *Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018))). An "'[e]mployee of the Government' includes" five categories of personnel:

1. "officers or employees of any federal agency";

2. "members of the military or naval forces of the United States";

3. "members of the National Guard [with certain conditions]";

4. "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation"; and

5. "any officer or employee of a Federal public defender organization [with one exception]."

*See* 28 U.S.C. § 2671.

We pause to make two observations. First, § 2671 begins with the word "includes," which ordinarily introduces exemplary, not exhaustive language. *Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("'Include' is a word of illustration, not limitation."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132–33 (2012). So, § 2671 does not necessarily contain every instance in which a person is an "employee of the Government."

Second, this case does not concern categories 2, 3, or 5 of the statutory definition because the military, National Guard, or Federal public defenders are not involved. So, we focus on categories 1 and 4. Category 1—"officers or employees of any

federal agency"—we will call the federal-employee clause.[1] Category 4—"persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation"—we will call the official-capacity clause.

The Supreme Court and this court have previously interpreted § 2671. These decisions inform our reading of the federal-employee and official-capacity clauses, and thus our decision here.

First up are two Supreme Court decisions. In *Logue v. United States*, 412 U.S. 521 (1973), the Court determined that county jail employees were not "employee[s] of the Government." Under the federal-employee clause, the plaintiffs argued that the county jail was a "federal agency." 412 U.S. at 526. Under the official-capacity clause, the plaintiffs claimed that the jail employees were "acting on behalf of" a federal agency—the Federal Bureau of Prisons. *Id.*

Whether the county jail was a federal agency turned on § 2671's contractor exemption. To resolve this question, the Court approved the use of the "law of torts and agency to define 'contractor.'" *Id.* at 528. Under these principles, courts look to the "division of responsibility" and who controls the "day-to-day operations" to assess the "traditional distinction" between employees and independent contractors. *See id.* at 527–29. Although the contract between the Bureau of Prisons and the county jail prescribed standards and rules, "the

---

[1] "[F]ederal agency" is further defined to exclude "contractors." 28 U.S.C. § 2671. This is called the "contractor exemption." *Logue v. United States*, 412 U.S. 521, 526 (1973). The terms "officers," "employees," and "contractors" are undefined.

agreement [gave] the United States no authority to physically supervise the conduct of the jail's employees." *Id.* at 529–30. Accordingly, the Court upheld the court of appeals' "holding that the [county jail] employees were employees of a 'contractor with the United States,' and not, therefore, employees of a 'Federal agency.'" *Id.*

The *Logue* plaintiffs also argued that the county jail employees were "employee[s] of the Government" under the official-capacity clause. *Id.* at 526.[2] The Court first noted that the legislative history "sheds virtually no light on the congressional purpose in enacting the 'acting on behalf of' language of § 2671." *Id.* at 530. The government's position was that "the language is designed to cover special situations such as the 'dollar-a-year' man who is in the service of the Government without pay, or an employee of another employer who is placed under direct supervision of a federal agency pursuant to contract or other arrangement." *Id.* at 531. In contrast, circuit judges who dissented from the denial of rehearing en banc expressed the view that a person "act[s] on behalf of a federal agency" when he "assume[s] obligations and responsibilities virtually identical to those of a salaried Federal employee." *Id.* The Court rejected this proposition because it would render § 2671's exclusion of contractors "virtually meaningless." *Id.* at 532. But the Court did not expressly adopt

---

[2] The court of appeals in *Logue* did not address this argument in its original panel opinion. *See Logue v. United States*, 459 F.2d 408 (5th Cir. 1972). Three judges dissented from the denial of rehearing *en banc*, pointing out that the plaintiff's argument under the official-capacity clause "was barely mentioned in the panel's opinion, much less refuted by it." *Logue v. United States*, 463 F.2d 1340, 1342 (5th Cir. 1972) (Brown, C.J., dissenting from denial of rehearing en banc).

the government's competing interpretation of § 2671, only saying the legislative history "afford[ed] some support" to that view. *Id.* at 531.

The Court next encountered § 2671 three years later in *United States v. Orleans*, 425 U.S. 807 (1976), where it analyzed whether a federally funded "community action agency" was a "federal agency" or a "contractor." 425 U.S. at 809. The Court summarized *Logue*'s guidance regarding the federal agency-contractor distinction: "[T]he question here is not whether the community action agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *Id.* at 815. Applying this standard to the facts, the Court said, "[t]he underlying statute emphasizes that a community action agency is a local, not a federal, enterprise; thus agents and employees of a local community action agency are not 'employee[s] of the [Federal] government.'" *Id.* at 816 (first alteration added). The Court then relied on legislative history to confirm its view. *Id.* at 817–19. Unlike *Logue*, *Orleans* only mentioned the federal-employee clause—it did not address the meaning of the official-capacity clause.

Turning to this court's precedents, the parties point us to two key cases: *Quilico v. Kaplan*, 749 F.2d 480 (7th Cir. 1984), and *Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995). Both were decided after *Logue* and *Orleans*.

*Quilico* involved physicians temporarily serving at a VA hospital. The court reviewed *Logue* and *Orleans*, ascribing to these cases the creation of the "strict control test." 749 F.2d at 482. "Under this test, before the defendants may be considered government employees, it must be demonstrated that the government is authorized to direct or control the detailed

performance of the defendants' work." *Id.* Notwithstanding its recognition of this test, the *Quilico* court held "the strict control test … is inappropriate in determining whether Congress intended that a [temporary VA] physician is to be immunized from liability" because if the strict control test were applied, "almost all physicians and surgeons operating within the VA program who are sued for medical malpractice, including those permanently employed, would not be immune." *Id.* at 485. As a result, "anytime a physician or surgeon is called upon to exercise independent judgment, he or she would face the risk of liability," and "this obviously was not the intent of Congress." *Id.*

Having decided the strict control test did not apply to physicians, this court once more turned to congressional intent to interpret the relevant statutes. *Id.* According to the court, the "legislative history … indicate[d] that it was the intent of Congress that the immunity granted to the VA physicians and surgeons be broad." *Id.* at 486–87. Equally obvious was Congress's intent to extend immunity—via a statute making the FTCA the exclusive remedy for suits against VA health care employees—to those physicians serving on a temporary basis. *Id.* at 487. In effect, the temporary-service doctors were treated as employees, receiving the benefit of immunity from liability. The *Quilico* court did not mention the official-capacity clause.

In *Ezekiel*, this court again interpreted § 2671, this time for physicians completing their medical residency at a VA hospital. The plaintiff argued that a medical resident was an independent contractor, not an employee. *See* 66 F.3d at 899. But the court disagreed, holding that "[t]he statutory scheme under which Dr. Michel was appointed … clearly establishes

that he was a federal employee rather than an independent contractor." *Id.* at 900. So, *Ezekiel* relied on statutory language, rather than the strict control test, to determine whether a medical resident was a federal employee, expressly reaffirming *Quilico*'s rejection of the strict control test where the "physicians [are] clearly covered by the FTCA." *Id.* at 902–03.

*Ezekiel* identified a caveat, though. The strict control test may "be a rational approach" in situations where the physician's provision of services was "pursuant to a contractual agreement" and the physician's relation "to the government is not unambiguously governed by statute to be an employer-employee relationship." *Id.* With this in mind, the court alternatively held that a medical resident would be an employee even under the strict control test because he was being trained and subject to "a higher degree of supervision and control … than would a private physician acting as an independent contractor under contract with the government." *Id.* Like *Quilico*, the court's analysis did not distinguish between the federal-employee and official-capacity clauses.

To summarize the applicable precedents from the Supreme Court (*Logue* and *Orleans*) and our court (*Quilico* and *Ezekiel*), courts may reference traditional principles of agency law, i.e., the strict control test, when interpreting the undefined terms "employee" and "contractor." But courts should begin with the statutory language if federal law creates the relationship under review. If the statutory framework makes clear that an individual is an employee or a contractor, the analysis ends. *See Ezekiel*, 66 F.3d at 900–03.

This provides the approach to applying the federal-employee clause. But, as explained above, an "employee of the Government" includes both "employees of any federal

agency" and "persons acting on behalf of a federal agency in an official capacity." These clauses are separate and distinct. To date, neither the Supreme Court nor this court has interpreted the phrase "persons acting on behalf of a federal agency in an official capacity."[3] Instead, the case law focuses on who qualifies as an "employee[] of [a] federal agency." Failing to give meaning to both clauses violates the surplusage canon that recommends, "[i]f possible, every word and every provision is to be given effect." SCALIA & GARNER, *supra*, at 174. And the plain meaning of § 2671 contemplates daylight between the two clauses—a situation where a person is not an "officer[] or employee[] of any federal agency" yet acts "on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671.

With this in mind, we turn to the official-capacity clause. Although not tasked with describing each scenario in which a person may be an "employee of the Government" under this clause, we briefly summarize judicial opinions and statutes that offer us some guidance.

A good place to start is the government's position in *Logue*, where it contended the official-capacity clause covered at least two "special situations": (1) "the 'dollar-a-year' man who is in the service of the Government without pay," and

---

[3] The Ninth Circuit has read *Logue* to apply the control test to both clauses. *Sisto v. United States*, 8 F.4th 820, 830 (9th Cir. 2021) ("[T]he Supreme Court applies the ordinary 'control test' to [the official-capacity clause] of § 2671."). But *Logue* did not adopt an interpretation of the official-capacity clause. Similarly, the Second Circuit has treated both clauses identically, concluding that they are to "be applied with an eye to general agency law." *Witt v. United States*, 462 F.2d 1261, 1263 (2d Cir. 1972). This approach, though, would erode any distinction between the two clauses.

(2) "an employee of another employer who is placed under direct supervision of a federal agency pursuant to contract or other arrangement." *Id.* at 531.

The first "special situation," those serving the United States without pay, is supported by Congress's express recognition that certain federal volunteers are "employee[s] of the Government" for purposes of the Act. *See, e.g.*, 16 U.S.C. § 4604(c)(2) (volunteers with Department of the Interior's Take Pride in America Program); 42 U.S.C. §§ 7142(b)(3), 7142c(b)(2)(A) (volunteers with the Department of Energy's National Atomic Museum and American Museum of Science and Energy); 42 U.S.C. § 12655n(b)(3) (participants—who receive a living allowance—in the American Conservation and Youth Service Corps). Similarly, Job Corps enrollees, who receive free vocational training and a basic living allowance, are designated as "employee[s] of the Government." 29 U.S.C. §§ 3198, 3200(a), 3207(a)(4).

Elsewhere in the U. S. Code, law enforcement officers who do not work for a federal agency, yet temporarily serve in a federal capacity, are designated "employee[s] of the Government." *See* 2 U.S.C. § 1974(b) (special officers of the Capitol Police, temporarily appointed officers who ordinarily serve with a different government agency); 49 U.S.C. § 44922(e) (state or local law enforcement officers who are deputized by the Transportation Security Administration to carry out federal airport security); *see also Provancial v. United States*, 454 F.2d 72, 75 (8th Cir. 1972) (holding that deputized special officers of the Department of Interior were "employee[s] of the Government" under the official-capacity clause).

As for the judiciary, courts have recognized that, in some cases, a private party cooperating with law enforcement, e.g.,

a confidential informant, may be an "employee of the Government." *See U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 250 (4th Cir. 2018); *Patterson & Wilder Const. Co. v. United States*, 226 F.3d 1269, 1278 (11th Cir. 2000); *Leaf v. United States*, 661 F.2d 740, 741 (9th Cir. 1981).

Volunteers, special law enforcement officers, and confidential informants—a noncomprehensive list—demonstrate the daylight between the federal-employee and official-capacity clauses. These positions represent the unusual scenario where an individual is not a federal officer or employee, nor a federal contractor, yet represents the federal government in an official capacity and thus falls within the Act's coverage. These examples adequately sketch the official-capacity clause's contours for our purposes.

### III

The estate bears the burden to prove that the surgeon, Dr. Mercier, was an "employee of the Government." *See Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) ("A party bringing suit against the United States bears the burden of proving that the government has unequivocally waived its immunity."). Using the two available options under § 2671 applicable here—the federal-employee clause or the official-capacity clause—and relying on the statutory language and case law discussed above, the estate could meet that burden by offering evidence that would permit a reasonable juror to conclude one of the following:

1. Dr. Mercier[4] was an "employee" of the VA;

2. Dr. Mercier was an "employee" of the Hospital *and* the Hospital was a "federal agency," not a contractor;

3. Dr. Mercier was "acting on behalf of [the VA] in an official capacity, temporarily or permanently in the service of the United States"; or

4. Dr. Mercier was otherwise an "employee of the Government" under an inexhaustive interpretation of "includes."

But the estate did not submit any evidence. The record consists solely of two declarations provided by the government. To the extent the estate relies on the pleadings, it "violat[es] the rule that a non-moving party may not rely solely on the allegations in [its] complaint to defeat summary judgment." *Shermer v. Ill. Dep't of Transp.*, 171 F.3d 475, 478 (7th Cir. 1999).

The undisputed facts in the record establish that Dr. Mercier was not employed by the VA in January 2016 or any other time, nor did he hold privileges at the VA hospital. Instead, the VA authorized payment for Talignani's neck surgery according to an outside provider's plan of care, not its own. That

---

[4] We agree with the district court that the sole issue before us is whether Dr. Mercier was an "employee of the Government." The estate mentions "staff" but does not identify anyone else or explain why that information is unavailable. FED. R. CIV. P. 56(d). Because the plaintiff bears the burden of proving that the alleged injury was caused by an "employee of the Government," a vague reference to "staff" is insufficient. *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) (affirming summary judgment against plaintiffs who "did not provide sufficient details" regarding alleged misconduct by unnamed postal employees).

outside provider became the Hospital when it referred Talignani for evaluation and treatment. The VA conducted a few pre-operative procedures, but Dr. Mercier performed the surgery with the assistance of Hospital staff and without VA supervision. Based on these undisputed facts, the district court properly entered summary judgment for the United States. The evidence indisputably shows that Dr. Mercier was not a VA employee, and the statutory framework and traditional principles of agency law demonstrate that the Hospital was not a federal agency.

This removes the federal-employee clause from the picture. Beginning with the statutory text, *Ezekiel*, 66 F.3d at 903, the provision authorizing the VA to make payments to non-VA hospitals for medical treatment does not subject non-VA facilities to employment terms or conditions—it treats non-VA facilities as contractors. *See* 38 U.S.C. § 1703 (2018). Indeed, the government points out that the statute, as it existed at the time of the surgery, referred to these outpatient care agreements as "contracts." *Id.* This stands in contrast to *Quilico* and *Ezekiel*, which involved a statutory provision permitting the Secretary of Veterans Affairs to "employ" individuals for various positions. 38 U.S.C. § 7405.

Traditional principles of agency law confirm this view. *Logue*, 412 U.S. at 528. The VA did not control or supervise the surgery conducted by Dr. Mercier in any way, thus negating any potential agency relationship between the VA and the Hospital. Moreover, the mere payment for services rendered does not create a principal-agent relationship. *See Orleans*, 425 U.S. at 816 ("The Federal Government in no sense controls 'the detailed physical performance' of all the programs and projects it finances by gifts, grants, contracts, or loans.").

A familiar scenario illustrates this point. An individual schedules a routine medical procedure at his local doctor's office, for which his private insurance company pays. If the procedure goes awry, no one expects that the patient could sue the insurer for medical malpractice. Rather, the suit is properly brought against the entity responsible for the alleged negligence—those involved in administering treatment. So too here. The VA's payment for Talignani's medical care did make it legally responsible for that care.

As to the official-capacity clause, there is no evidence that Dr. Mercier was acting on behalf of the VA in an official capacity. Instead, the record shows that Dr. Mercier operated independently, using the Hospital's resources. As the district court observed, "[t]here is no indication that Dr. Mercier maintained an office at the VA or used support staff, supplies, or equipment furnished by the VA." Finally, we note that the estate does not suggest Dr. Mercier is otherwise an "employee of the Government," assuming § 2671 should be read as an inexhaustive list.

The estate failed to make a strong showing under either the federal-employee or official-capacity clauses. The undisputed evidence shows that (1) Dr. Mercier was not employed by the VA, and (2) the Hospital was not a federal agency—thus, the federal-employee clause is ruled out. The estate also offered no evidence that Dr. Mercier was (3) acting on behalf of the VA in an official capacity, or (4) otherwise an "employee of the Government" under an inexhaustive interpretation of "includes."

For these reasons, the Act's limited waiver of sovereign immunity does not extend to this lawsuit. We AFFIRM the decision of the district court.